**John J. ADKINS, et al., Plaintiffs–Appellants (90–3164)/Cross–Appellees,**

**v.**

**GENERAL MOTORS CORPORATION, Defendant–Appellee/Cross–Appellant (90–3234),**

**and**

**Local 801; International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO, Defendants–Appellees/Cross–Appellants (90–3235).**

Nos. 90–3164, 90–3234 and 90–3235.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1991.

Decided Oct. 15, 1991.

**1202**

Dwight D. Brannon (argued and briefed) Brannon & Hall, Dayton, Ohio, for plaintiffs-appellants cross-appellees.

Joseph P. Buchanan (argued and briefed), Cowden, Pfarrer, Crew & Becker, Dayton, Ohio, Elmer W. Johnson, General Motors Corp., Detroit, Mich., for defendant-appellee cross-appellant General Motors Corp.

Richard Rice (argued and briefed), Kettering, Ohio, Carole W. Wilson, Washington, D.C., for defendant-appellee cross-appellant Intern. Union of Elec., Radio & Machine Workers, AFL–CIO–CLC

Before MILBURN and BOGGS, Circuit Judges, and DEMASCIO,* Senior District Judge.

BOGGS, Circuit Judge.

Plaintiffs are a class of former employees of defendant General Motors Corporation (General Motors) and their spouses. Because the spouses' claims are derived from the employees' claims, we shall use the term "plaintiffs" to refer to the employees only, unless the facts and the law of this case require us to distinguish between the plaintiffs-employees and the plaintiffs-spouses.

At all times relevant to this dispute, the plaintiffs were members of defendant International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers and of defendant Local 801 of that union (collectively, "the union"). In a prior action in the United States District Court for the Southern District of Ohio, plaintiffs brought a hybrid unfair representation/unfair labor practices claim against General Motors and the union, pursuant to the Labor Management Relations Act (LMRA) § 301, 29 U.S.C. § 185, and the Labor–Management Reporting and Disclosure Act (LMRDA) § 101(a)(1), 29 U.S.C. § 411(a)(1). *See generally Adkins v. General Motors Corp.*, 556 F.Supp. 452 (S.D.Ohio 1983) (motion to dismiss); *Adkins v. General Motors Corp.*, 573 F.Supp. 1188 (S.D.Ohio 1983) (motion for summary judgment), *aff'd in part, remanded in part,* 769 F.2d 330 (6th Cir.1985). In that case, plaintiffs alleged, in substance, that General Motors and the Union had colluded in negotiating a collective-bargaining agreement in order to abrogate the special seniority rights contained in a collective-bargaining agreement called the "bridge agreement." We will discuss the nature of this agreement and the plaintiffs' rights under it more fully later in this opinion.

In the same action, plaintiffs also pursued pendent state law claims for breach of contract, tortious interference with contract rights, intentional infliction of emotional distress, and loss of consortium. The federal labor law claim was dismissed with prejudice as untimely. The pendent state law claims were dismissed without prejudice, for lack of a substantial federal question to support the exercise of jurisdiction over state law claims.

After the dismissal, many of the same plaintiffs filed a complaint in state court alleging fraud, tortious interference with contract rights, and intentional infliction of emotional distress, thereby initiating the case now before this court on appeal. *See generally Adkins v. General Motors Corp.*, 578 F.Supp. 315 (S.D.Ohio 1984). The factual allegations of the complaint were substantially the same as those advanced in the federal suit. Defendants re-

* The Honorable Robert E. DeMascio, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

moved the case to federal district court, asserting that these claims were fully preempted by federal labor law. Plaintiffs then moved to remand the case. The court below ruled that since plaintiffs' fraud and misrepresentations claims were fully preempted by federal labor law, the case contained a federal question substantial enough to support the exercise of federal question jurisdiction. At the same time, the district court also gave the defendants twenty days to present proper motions for summary judgment on all claims. The court noted its previous disposition of plaintiffs' federal labor law claims, which it had dismissed as untimely, and the identity of the complaint filed in the previous action and this one.

After defendants moved for summary judgment pursuant to the suggestion of the district court, 713 F.Supp. 1043 the court below held that the federally-preempted fraud and tortious interference claims were barred by the six-month statute of limitations of the National Labor Relations Act. *See* 29 U.S.C. § 160(b); *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983). These claims were dismissed with prejudice.

With respect to plaintiffs' claims for emotional distress, the court ruled that some were preempted and others were not preempted. Those preempted were dismissed with prejudice as time-barred. Those not preempted were remanded to state court, because the dismissal of the federally preempted claims had left the case without a substantial federal question. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

This timely appeal and cross-appeal follow the court's dismissal and remand. On appeal, plaintiffs contend that the district court erred in holding any of the claims preempted and in remanding the unpreempted emotional distress claim. On cross-appeal, defendants argue that the court erred in holding that some of plaintiffs' emotional distress claims were not preempted and in failing to dismiss all these claims with prejudice as time-barred under federal labor law.

We affirm the district court's judgment in so far as it holds plaintiffs' claims completely preempted and therewith barred as untimely by applicable federal labor law. We vacate the judgment below in so far as it holds that plaintiffs' emotional distress claims are not completely preempted and remands them to state court. We remand the case to the district court with instructions to dismiss all of plaintiffs' emotional distress claims with prejudice as completely preempted and time-barred under federal labor law.

I

Before the events giving rise to this case occurred, plaintiffs were employed by the Frigidaire Division of General Motors at its Dayton-area plant. They were paid at the wage rates prevailing in the automotive industry instead of the lower wages of the appliance industry. General Motors wanted to pay its Frigidaire employees at the lower rates and, to this end, it negotiated a new agreement with the local in 1976. As the *quid* for this *quo*, General Motors agreed that Frigidaire workers could transfer to the nearby Delco plant, also owned by General Motors and organized by the local, where automotive workers' rates prevailed. The agreement granting the plaintiffs these rights, called the "bridge agreement" by the parties, provided that if there were lay-offs at Delco, Frigidaire workers who had transferred there could return to Frigidaire, where they would replace workers with less seniority. Plaintiffs took advantage of the "bridge agreement" and transferred from the Frigidaire plant to the Delco plant. The Delco plant later became a part of the Harrison Radiator Division of General Motors, but for purposes of simplicity we shall continue to refer to it as the Delco plant.

In 1979, General Motors sold its Frigidaire Division to White Motors, but retained possession of the physical plant at Dayton. General Motors planned to convert the facility and use it as part of its Chevrolet Division. All the workers were

laid off as a result. The local then entered into negotiations with General Motors in order to secure employment for its laid-off members when the plant re-opened and to maintain its own position as their bargaining agent. General Motors agreed to re-hire its laid-off employees and to recognize the union, but in the ensuing collective-bargaining agreement, the "bridge agreement" was abrogated. The resulting agreement was ratified by workers from the former Frigidaire plant and by the former Frigidaire workers who had transferred to Delco. The latter group included the plaintiffs. At the time of ratification, workers at the Delco plant were experiencing full employment, while workers at the Frigidaire plant were being laid off. As the year progressed, however, the situation was reversed. Workers at the Delco plant were laid off, including the plaintiffs. When they tried to retreat to the former Frigidaire plant, now part of Chevrolet, they learned that the "bridge agreement" had been abrogated.

The substance of plaintiffs' grievance, both in the preceding case and in this one, is that they were not told that the new collective-bargaining agreement terminated their retreat rights and that the union president told them many times prior to ratification of the new collective bargaining agreement and afterwards that their "bridge agreement" rights would not be affected by the new arrangement. Plaintiffs argue that these representations were fraudulent and wrongly induced them to ratify an agreement not in their interest. Plaintiffs assert that the motivation for this alleged fraud was collusion between the local and General Motors, whereby the union agreed to the termination of plaintiffs' rights in exchange for General Motors's recognition of the local as the representative of the workers at the new Chevrolet plant. According to plaintiffs, this collusion constitutes common law fraud un-der state law. Plaintiffs also argue that the local president's post-ratification assurances about the survival of their rights have created a contract, which defendants have violated by refusing to honor their "bridge agreement" rights. Finally, the plaintiffs take the position that by their conduct in negotiating and implementing the new collective-bargaining agreement, defendants negligently[1] or intentionally inflicted severe emotional distress on them and their spouses.

## II

The district court's well-reasoned opinion in response to plaintiffs' motion to remand and defendants' motion for summary judgment began by considering when claims apparently arising under state law are preempted by federal labor law. In the last decade, the Supreme Court has handed down four significant opinions on that question: 1) *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); 2) *International Brotherhood of Electrical Workers, A.F.L.–C.I.O. v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); 3) *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); and, 4) *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). After reviewing these cases, the district court held that a claim made by the plaintiffs under state law would be fully preempted by federal labor law if it arose from or required the interpretation of any of the collective-bargaining agreements relevant to the case. *See Lingle*, 486 U.S. at 405–06, 108 S.Ct. at 1881 ("Thus *Lueck* faithfully applied the principle of [LMRA] § 301 preemption ...: if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent

---

1. The wrongdoing that plaintiffs ascribe to defendants is all intentional: *intentionally* misrepresenting the 1979 CBA; tortiously, *i.e., intentionally,* interfering with contract rights; and acting outrageously, *i.e., intentionally,* to cause them emotional distress. None of the cases cited in their brief refers to the negligent inflic-tion of emotional distress. We have no choice but to treat plaintiffs' claims for the negligent infliction of emotional distress as pleading boilerplate, since plaintiffs do not specify the nature of the negligence, as opposed to the intentional conduct, on the part of the defendants that caused the plaintiffs emotional distress.

results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute."); *Williams,* 482 U.S. at 395, 107 S.Ct. at 2431 ("[For preemption purposes, s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' *Electrical Workers v. Hechler,* 481 U.S. at 859 n. 3, 107 S.Ct. at 2166–67 n. 3....").

After reviewing plaintiffs' allegations of fraud under this standard, the district court concluded that "virtually every fraudulent representation allegedly made by [d]efendants relates in one way or another to the terms of the various collective-bargaining agreements." For that reason, the court held that plaintiffs' claim for fraud under state law was "substantially dependent" on the terms of the collective-bargaining agreement and therewith preempted by federal labor law.

To reach this conclusion, the court below was obliged to sift through the complaint in order to detect the factual allegations underlying its claim for relief from fraud. This was not easy work. The complaint is very difficult to understand. It is prolix and vague. Because of this problem, we find it necessary to quote more extensively from the plaintiffs' pleadings and the opinion of the court below than we normally

do.[2] The following passage from the court's opinion exemplifies the approach the court took to the task of defining plaintiffs' claims.

[In their motion in opposition to summary judgment,] "Plaintiffs claim that the Unions misrepresented GM's position in 1979 contract negotiations and thereby induced them to enter into the agreements." ... Plaintiffs specifically assert that "GM, IUE and 801 concerted[,] presented, urged and proposed ... [the] agreements and modifications [of February 23, 1979] in a manner designed to insure their adoption through the permitted withholding of information necessary to meaningfully inform [the plaintiffs] that their 'bridge agreement' rights would be impaired by an affirmative ratification." Plaintiffs further allege that "[i]n furtherance of ... [the] concerted plan of GM, IUE and 801 to ... substantially confine any consideration of ... [the] modifications, GM, IUE and 801 concertedly confined the scope of any circulated information regarding the proposals to the explanation and discussion of only the benefits to be derived by the persons then employed by Frigidaire[,] while wholly ignoring and being totally silent with respect to any consequent converse detriment whatsoever to [the plaintiffs]." ... *While not* every *claim of fraudulent misrepresentation would be preempted by § 301, based on the foregoing allegations, the Court concludes that the* Plaintiffs' *claims of*

---

**2.** In their brief and at oral argument, the plaintiffs allude to additional conduct by the president of Local 801 and other parties to this case, not mentioned in their complaint, which they maintain would support their claims of fraud and contractual obligations arising outside the context of collective bargaining agreement. They argue that the court erred in preventing them from proving this additional conduct by granting summary judgment in favor of the defendants. Even if we were inclined to indulge this argument because of the mandate of the Federal Rules that a complaint is to be construed liberally, *see* FED.R.CIV.P. 1, our forbearance would not aid the plaintiffs. The court below disposed of the case on a motion for summary judgment. In opposing such a motion, plaintiffs were under a duty not only to state the allegation they intended to prove at

trial but also to demonstrate the nature and quality of the evidence they had at their disposal. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) [of the Federal Rules of Civil Procedure] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) ("The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.").

*fraudulent misrepresentation* are *in fact preempted by § 301.*

*It cannot be disputed that Plaintiffs' claims of fraudulent misrepresentation all relate to the various collective bargaining agreements. It would be impossible to determine whether the information provided to Plaintiffs by Defendants was false (or insufficient) without analyzing the terms of the various collective bargaining agreements.*

J.A. 116–17. (Italics supplied.) (Citations omitted.)

In considering plaintiffs' tortious interference claim, the court also held that they were fully preempted, because adjudicating any of them would require an analysis of plaintiffs' rights under the collective-bargaining agreements. The following excerpts from the district court's opinion exemplify the approach the court took to these claims and their supporting allegations of fact.

In Count Three of their Complaint, Plaintiffs assert that "[a]s a proximate result of the conduct of the defendant IUE, the defendant Local 801 breached its duties and agreements with the plaintiffs." Plaintiffs further assert that "[a]s a proximate result of the conduct of the defendant unions, the defendant General Motors did breach its expressed and implied agreements with the plaintiffs." Finally, Plaintiffs assert that "[a]s a proximate result of the conduct of the defendant General Motors, the defendant unions did breach their contracts, fiduciary duties and business relationships with said plaintiffs." ...

\*    \*    \*    \*    \*    \*

Defendant Local [801] allegedly breached its fiduciary relationship by promoting changes in Plaintiffs' collective bargaining agreement which were allegedly detrimental to Plaintiffs and by allegedly concealing the fact that said changes were in fact detrimental. *An analysis of whether or not Defendant Local 801 breached its duty of fair representation requires an analysis of the terms of the collective bargaining agreements. Without such an analysis, it would be*

*impossible to determine the impact of the Defendant Local 801's actions upon the Plaintiffs.*

\*    \*    \*    \*    \*    \*

Further, [with respect to the contention that the local and the union induced General Motors to breach its duties toward the plaintiffs,] it must be remembered that Plaintiffs' chief complaint is that GM modified the terms of the collective bargaining agreements. Even assuming, *arguendo,* that some implied agreement, separate and apart from the collective bargaining agreements, existed between Plaintiffs and Defendant GM, *it would be impossible to determine whether said agreement was breached by the modification of the terms of the collective bargaining agreements without analyzing and interpreting the terms of the collective bargaining agreements.*

\*    \*    \*    \*    \*    \*

Finally, [with respect to plaintiffs' claim that GM induced the local and the union to breach its duties toward the plaintiffs,] Plaintiffs basically assert that the Defendant Unions' actions in promoting the modification of the collective bargaining agreements breached Defendant Unions' duty of fair representation. *The propriety of Defendants' actions simply cannot be determined in the absence of an analysis of the terms of the collective bargaining agreements before and after the modification of February 23, 1979.*

J.A. 118–22. (Emphasis supplied.) (Citations omitted.)

### III

### A

Plaintiffs rely largely on *Caterpillar, Inc. v. Williams, supra,* to argue against the district court's disposition of their fraud and tortious interference claims. Because of the use plaintiffs make of the case, we begin our consideration of plaintiffs' arguments with a review of its facts and holdings.

In *Caterpillar,* plaintiffs were a group of long-time employees of the Caterpillar Corporation at its San Leandro, California plant. They hired in as hourly workers under terms established by a collective-bargaining agreement with United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). Later during their employment with Caterpillar, they were promoted to the salaried ranks. While in those jobs, plaintiffs were told that the company would always take care of them and that if the San Leandro plant ever closed, plaintiffs would be given jobs in other divisions or subsidiaries of Caterpillar's enterprises. Later still in their employment at San Leandro, plaintiffs were returned to their former positions as hourly employees. While they were in those positions, the company decided to close the San Leandro plant. Plaintiffs were notified that they were laid off and that promises to find employment for them elsewhere would not be honored.

Plaintiffs then brought suit in state court, alleging that Caterpillar's promises of continuing employment were contractual obligations under state law and independent of any collective-bargaining agreement between the UAW and Caterpillar. Caterpillar removed the action to federal court, contending that, as a matter of law, any rights plaintiffs might have because of contracts under state law were merged into the collective-bargaining agreement. Because of this merger, Caterpillar alleged, plaintiffs' state law claims were fully preempted by federal labor law.

The Supreme Court disagreed and held that removal was improper under the "well-pleaded complaint rule" of federal question jurisdiction. 482 U.S. at 391–93, 398–99, 107 S.Ct. at 2429–30, 2432–33. This rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." 482 U.S. at 392, 107 S.Ct. at 2429. In addition, the rule provides that "a case may not be removed to federal court on the basis of a federal defense ..., even if the defense is anticipated in the plaintiff's complaint, and even

if both parties concede that the federal defense is the only question truly at issue. 482 U.S. at 393, 107 S.Ct. at 2430.

Normally, federal preemption is a defense to a state law claim and may not serve as the basis for removal. 482 U.S. at 392, 107 S.Ct. at 2430. The doctrine of "complete preemption," however, is a corollary to the "well-pleaded complaint rule." 482 U.S. at 393, 107 S.Ct. at 2430. Once an area of state law has been completely preempted, any claim purportedly based on the preempted state law is considered a federal claim from its inception. *Ibid.* Complete preemption occurs when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Ibid. (quoting Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). The complete preemption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims preempted by LMRA § 301. *Ibid.* The preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violations of contracts between an employer and a labor organization. 482 U.S. at 394, 107 S.Ct. at 2430 (citing *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983)). Section 301 preemption governs claims either founded directly on rights created by collective-bargaining agreements or "substantially dependent on analysis of a collective-bargaining agreement." 482 U.S. at 394, 107 S.Ct. at 2431 (citing *Electrical Workers v. Hechler, supra*).

Despite the strength of § 301 preemption, the *Caterpillar* court held that plaintiffs' state law contract claims were not completely preempted so as to justify removal to federal district court. *Ibid.* The court reasoned that Caterpillar's promises to the plaintiffs, if proven, constituted an employment contract with the plaintiffs individually, separate from the collective-bargaining agreement, that was not necessar-

ily superseded by the collective-bargaining agreement between Caterpillar and the UAW. 482 U.S. at 396, 107 S.Ct. at 2431. In other words, "[the *Caterpillar* plaintiffs'] complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address the relationship between the individual contracts and the collective agreement." 482 U.S. at 395, 107 S.Ct. at 2431.

This holding did not preclude the possibility that the *Caterpillar* plaintiffs' claims were *partially* preempted. In other words, the defendant employer might successfully raise federal preemption as a defense to the plaintiffs' state law contract claim if it is able to show that enforcing the alleged contracts would violate federal labor laws. *See* 482 U.S. at 397, 107 S.Ct. at 2432. For example, Caterpillar might successfully defend by showing that the purported contracts with the individual plaintiffs violated the principle of exclusive representation of the National Labor Relations Act § 9(a), 29 U.S.C. § 159(a). *Ibid.* Nonetheless, "the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule.... [A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law...." 482 U.S. at 396, 107 S.Ct. at 2433.

On the strength of *Caterpillar*, plaintiffs in this case argue that the district court erred by giving full preemptive effect to defendants' "defensive allegations" when it considered plaintiffs' claims of fraud. With respect to their claims of tortious interference, plaintiffs argue that the district court erred by not holding that their contract claims arose outside the context of the collective bargaining agreement. Neither argument has merit.

B

■ Plaintiffs misconstrue the district court's opinion when they argue that the court mistakenly treated defendants' assertion of federal preemption as an affirmative defense to fraud. Rather, the district court relied solely on the allegations on the face of the complaint to determine that all of plaintiffs' claims of fraud were fully preempted. An examination of the passages from the district court's opinion quoted above should make that point clear. The plaintiffs' claim, as the court understood it, was that the president of Local 801 had fraudulently induced them to ratify the 1979 collective-bargaining agreement that abrogated the "bridge agreement." As the court below correctly noted, under Ohio law, damages are a necessary element of a claim for fraud. *Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 169, 462 N.E.2d 407, 409 (1984). The damage alleged by plaintiffs was the loss of "bridge agreement" entitlements, which had been effected by the 1979 collective-bargaining agreement. In order to adjudicate this claim, the court below would have been obliged, at a minimum, to determine that the "bridge agreement" conferred such rights on the plaintiffs, that the subsequent collective-bargaining agreement abrogated those rights, and that the plaintiffs agreed to the 1979 collective-bargaining agreement because the president of Local 801 misrepresented those rights as the court construed them. As the court below correctly concluded, such a judicial undertaking would necessarily involve the federal courts in adjudicating a claim "substantially dependent on analysis of collective-bargaining agreements." *Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2431; *Electrical Workers,* 481 U.S. at 859 n. 3, 107 S.Ct. at 2166–67 n. 3. We might go even farther and say that the rights at issue are "created by collective-bargaining agreements," *Caterpillar, ibid.,* thus effecting a complete preemption of plaintiffs' fraud claims.

Plaintiffs also argue that the court did not consider all of their allegations of fraud in concluding that their claim was fully preempted. Their brief states:

As set forth in paragraphs 39 through 42 [of the complaint], the Plaintiffs–Appellants further alleged, after completion of

all collective bargaining agreements, and after all the actions surrounding the collective bargaining agreements, that the President of Local 801 from February of 1980 through January of 1981, made various extensive fraudulent misrepresentations regarding the continued recognition of the seniority rights of the laid off Plaintiffs–Appellants. Specifically he indicated that these employees had nothing to worry about, and they accordingly would participate fully in the Chevrolet jobs....

These fraudulent representations made by the President obviously took place long after the collective bargaining agreements, and they were not representations being made with regards to the collective bargaining agreements, but were representations that the Plaintiffs–Appellants would be participating in the Chevrolet jobs like their counterparts.

\* \* \* \* \* \*

In the case at bar, the fraudulent representation claims are based upon the representations made by the President; the claim does not require extensive interpretation of the collective bargaining agreement. Instead, the Plaintiffs–Appellants, in raising their separate state claims, complain with regards to the fraudulent acts on the part of the President in making representations that seniority, despite the terms and conditions of the collective bargaining agreement, was going to be respected.

*Brief for the Appellants* at 20–21, 22–23.

Plaintiffs' position in the passages just quoted from their brief is not very clear. We do not know whether they are alleging that the president of Local 801 told them that the 1979 collective-bargaining agreement did not affect their rights under the "bridge agreement," or whether they are alleging that the president of Local 801 told them that their purported entitlement to jobs at the Chevrolet plant would be respected, despite the 1979 collective-bargaining agreement. What is clear is that plaintiffs maintain that these representations occurred independently of the collective bargaining agreement and that, as a result, they give rise to claims not completely preempted by federal law.

Under either understanding of the meaning of plaintiffs' complaint, this argument is without merit. We assume first, for the sake of argument, that plaintiffs are asserting that after the 1979 collective-bargaining agreement had been negotiated and ratified, the president of Local 801 concealed from the plaintiffs that it abrogated their "bridge agreement" rights. The fact that these alleged misrepresentations took place outside the context of collective bargaining is immaterial. The critical inquiry is whether a court adjudicating this claim must determine rights arising under a collective bargaining agreement. It surely must, if plaintiffs are alleging that the president of Local 801 concealed from them the fact of their loss of "bridge agreement" rights.

In order to find fraud under Ohio law, a court must find, among other things, that there is a misrepresentation or concealment of fact material to the transaction, that the party against whom fraud is alleged knew of the falsity of his misrepresentation or was so indifferent to truth or falsity that knowledge may be inferred, and that the misrepresentations were made with the intent of inducing the other party to rely on it to his detriment. *Cohen, supra.* In order to make such a determination in this case, the court would have to ascertain what the plaintiffs' rights were under the bridge agreement; whether they had been abrogated under the 1979 collective-bargaining agreement; what the Local's president had told plaintiffs about the 1979 collective-bargaining agreement; whether or not it was false, given the court's construction of the agreements at issue; and whether the Local president knew or should have known of its falsity. These determinations require an analysis of both the "bridge agreement" and the 1979 collective-bargaining agreement. The analysis may not be especially difficult, but it would be extensive. Plaintiffs' fraud claims, on this understanding of their complaint, are so intertwined with the terms of the collective-bargaining agreements

present in the case that they may not be separated. *See Allis–Chalmers Corp.,* 471 U.S. at 213, 105 S.Ct. at 1912.

We next assume that plaintiffs are instead alleging that the president of Local 801 told them that their "seniority rights" would be respected, despite the terms of the 1979 collective-bargaining agreement abrogating their "bridge agreement" rights. We can conceive of no understanding of the term "seniority rights" in this case other than the plaintiffs' asserted rights to transfer from the Delco plant to the Chevrolet plant (formerly the Frigidaire plant), carrying their job seniority with them. As we understand the facts of this case, this portable seniority is the basis of plaintiffs' asserted entitlement to share in jobs at the Chevrolet plant. These rights were created by the "bridge agreement," one of the collective-bargaining agreements of this case. Under the construction of plaintiffs' allegations that we are considering here, adjudication of plaintiffs' claim would require, at the minimum, a determination of what plaintiffs' "bridge agreement" rights were and whether they are being violated by the new arrangements. Again, the analysis may not be difficult, but it is extensive.

We conclude that the district court did not err in holding all of plaintiffs' fraud claims completely preempted by federal labor law. We find such a result completely consistent with federal labor law policy. Indeed, it is required by it. The parties do not dispute that both Local 801 and General Motors intended that the 1979 collective-bargaining agreement terminate the "bridge agreement." Plaintiffs, in effect, are asking this court to find that the rights thus terminated were reborn under state law because of the inequitable conduct of General Motors and union officials when the 1979 collective bargaining agreement was submitted for member ratification and at various times thereafter. We are asked to enforce those rights either by awarding money judgments for their violation or by injunction. We would thereby create a situation in which rights extinguished under federal labor law were vital under state law. The purpose of the doctrine of complete preemption is to prevent one set of rights and obligations from issuing from a collective-bargaining agreement under federal law while contradictory rights and obligations flowed from state law. If plaintiffs have been betrayed by their employer and their union and cheated out of valuable seniority rights in a fraudulent ratification procedure, their remedy is a timely suit for unfair representation/unfair labor practices. Plaintiffs cannot be permitted to revive rights deemed extinguished under federal labor law by relying on state common law.

## C

We now turn to plaintiffs' tortious interference claims. Plaintiffs rely on *Caterpillar* to argue that contractual obligations between employer, employee, and union may exist outside the collective-bargaining agreement. They fault the district court for failing to consider this possibility in addressing their tortious interference claims. As we understand the plaintiffs' position, they are arguing that a contract was formed because of the representation of the president of Local 801 and others that their "bridge agreement" rights either had not been abrogated, or would be respected, despite abrogation. They analogize this purported contract to the promises made to the *Caterpillar* plaintiffs about continuing employment with the company. On the basis of this analogy, they assert that the contractual rights arising from the representations of the local president and others can be determined without reference to the collective-bargaining agreements present in the case. Hence they maintain that removal on the basis of complete preemption was improper.

We do not accept this analogy. In *Caterpillar,* the alleged contract between the plaintiffs and the employees was independent of any collective-bargaining agreement; in this case, the purported contracts between the plaintiffs, on the one hand, and their union and their employer, on the other, are not independent in any way of the collective-bargaining agreements in the

case. A comparison between *Caterpillar* and this case should make the point clear.

In order to adjudicate the *Caterpillar* plaintiffs' state law contract claim, a court would be obliged to engage in ordinary contract analysis. It would be required to determine questions such as whether Caterpillar had offered the plaintiffs continuing employment, whether the plaintiffs had accepted the offer by performance or otherwise, and whether there was adequate consideration for the promises. Although these determinations could be made without any reference whatsoever to a collective-bargaining agreement, once it had been established that such a state law contract existed, the defendant company would be permitted to argue, for example, that subsequent collective-bargaining agreements had displaced this contract because of the exclusive representation provisions of the National Labor Relations Act. Such an argument would raise preemption as a defense to the assertion of contractual obligations that had been established without reference to a collective-bargaining agreement, but it would not serve as the basis of removal.

In this case, in order to adjudicate plaintiffs' claim that a contract existed under state law, the court would have to determine that plaintiffs were offered "seniority rights" based on the "bridge agreement" after the 1979 collective-bargaining agreement, that they accepted the offer, that there was consideration, and so on. Or the court may have had to determine that plaintiffs were induced to believe that their asserted "seniority rights" under the "bridge agreement" were intact or would be respected, even if not intact, and that they relied on these representation justifiably and to their detriment. An exercise such as this necessarily involves the court in determining what the "seniority rights" under the "bridge agreement" are. It follows that adjudicating the plaintiffs' tortious interference claim necessarily involves an analysis of a collective-bargaining agreement because the contractual relation necessary to the claim is based on the representations of the president of local 801 that their "seniority rights" would con-

tinue. For this reason, plaintiffs' tortious interference claims are fully preempted. The court below did not err in so holding.

## IV

■ We now reach plaintiffs' emotional distress claims. The district court held some of these claims completely preempted, others not completely preempted. In the opinion of the district court, plaintiffs' claims were completely preempted if they were alleging that General Motors and the union caused them emotional distress by the very fact of actions such as withholding information about the 1979 collective-bargaining agreement; by concealing the fact that a vote was to be held; by insisting on quick ratification of the agreement; or by failing to consider their "bridge agreement" rights. On the other hand, the court concluded that plaintiffs' emotional distress claims were not preempted in so far as they were based on the defendants' conduct in doing these things.

Ohio law requires that a defendant's conduct be "extreme and outrageous" if there is to be tort liability for a plaintiff's emotional distress. *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 382, 453 N.E.2d 666, 671 (1983). The following passages from the district court's opinion exemplify its approach to the claims of emotional distress under Ohio law in this case.

> In ¶ 25 of their Complaint, Plaintiffs assert that Defendant GM, Defendant IUE and Defendant Local 801 "proposed modifications of the Local Seniority Agreement of Dec. 10, 1976 and of the Bridge Agreement of December 10, 1976, together with the urging that the same be adopted." *If the Plaintiffs are claiming that in proposing this modification, Defendants caused Plaintiffs' emotional distress, the Court concludes that said claim is preempted by § 301 of the LMRA. Such a claim is "inextricably intertwined with consideration of the terms of the [various] labor contract[s]."* Allis–Chalmers Corp., 471 U.S. at 213, 105 S.Ct. at 1912.

If the Plaintiffs are claiming that the Defendants' failure to consider the rights of Plaintiffs caused Plaintiffs emotional distress, the Court concludes that said claim is preempted [by federal labor law] for said claim is "inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Id.* at 213, 105 S.Ct. at 1912.

If the Plaintiffs are claiming that [by withholding relevant information about the collective bargaining agreement,] Defendants caused Plaintiffs emotional distress, the Court concludes that said claim must be preempted ... as the evaluation of such a claim "is inextricably intertwined with consideration of the terms of the [various] labor contract[s]." *Id.*

If the Plaintiffs are claiming that Defendants' alleged conduct in concealing *the fact* that a vote was to be held caused the Plaintiffs emotional distress, the Court concludes that said claim is *not* preempted by § 301 of the LMRA. Regardless of whether the proposed changes to the collective bargaining agreements would have a major or minor effect upon Plaintiffs, it could be argued that Defendants' alleged conduct in denying Plaintiffs the *right to participate in decision making* caused Plaintiffs emotional distress.

J.A. 123–26. (Italics supplied.)

Plaintiffs rely on *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) to uphold the judgment of the court below that some of their emotional distress claims are not completely preempted. They also rely on *Farmer* to argue that the court erred in holding that other emotional distress claims were fully preempted. This reliance is misplaced.

In *Farmer,* the plaintiff, a vice-president of a local union, developed sharp differences with other officers of the local over union policies. The local ran a closed hiring hall. Plaintiff alleged that as a result of his policy disagreement with the leadership of the local, he was discriminated against when jobs were assigned at the hiring hall. He also alleged that he was subjected to a campaign of vituperation and harassment when he came to the union hall. He filed suit in California state court, alleging that union officials had intentionally engaged in outrageous conduct causing him severe emotional distress. In the same action, he also alleged that the local officials' discrimination against him breached the relevant collective-bargaining agreement and his membership contract with the union. The state court dismissed his discrimination and breach of contract claims as completely preempted, but allowed his emotional distress claim to go to the jury. The case ultimately came to the Supreme Court, which upheld the state trial court's exercise of jurisdiction over the emotional distress claims.

The premise of the court's reasoning was that the complete preemption doctrine should not be applied in cases where "the State ... has a substantial interest in protecting its citizens" from tortious conduct, 430 U.S. at 302, 97 S.Ct. at 1064, or where the activity at issue is merely peripheral to the concerns of federal labor law, 430 U.S. at 297, 97 S.Ct. at 1061. On the other hand, "[t]o leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between the power asserted by Congress and the requirements imposed by state law. 430 U.S. at 296, 97 S.Ct. at 1061.

Applying these consideration to the case before it, the Supreme Court held:

No provision of the National Labor Relations Act protects the "outrageous conduct" complained of.... Regardless of whether the operation of the hiring hall was unlawful or lawful under federal statutes, there is no federal protection for conduct on the part of union officers which is so outrageous that "no reasonable man in civilized society should be expected to endure it." ...

The State, on the other hand, has a substantial interest in protecting its citizens from the kind of abuse [complained of]. That interest is no less worthy of recognition because it concerns protection

from emotional distress caused by outrageous conduct, rather than protection from physical injury ... or damage to reputation.

\*    \*    \*    \*    \*    \*

On balance, we cannot conclude that Congress intended to oust state-court jurisdiction over actions for tortious activity such as that alleged in this case. At the same time, we reiterate that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme. [Neither] union discrimination in employment opportunities nor [threats of discrimination can in themselves] form the underlying "outrageous" conduct on which the state-court action is based.... [S]omething more is required.... [I]t is essential that the state tort be either unrelated to the employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

Two further limitations deserve emphasis. Our decision rests in part on our understanding that California law permits recovery only for emotional distress sustained as a result of "outrageous" conduct. The potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts.

430 U.S. at 302, 305–06, 97 S.Ct. at 1064, 1066.

Although the court below did not express itself in these terms, its decision can be understood as analogizing the fact of withholding information about the 1979 collective bargaining agreement in this case to the hiring discrimination alleged in *Farmer*. The decision can also be understood as analogizing the manner in which the information was withheld in this case to the manner in which the plaintiff in *Farmer* was abused. The analogies appear to establish the boundary between the central concerns of federal labor policy and the unpreempted interests of state law in protecting its citizens. In this case, the line divides the claim that information was allegedly withheld from the claim that it was withheld in an abusive manner.

We are unpersuaded that the line has been drawn correctly, appealing though the distinctions of the court below are on first inspection. Although it is theoretically possible that union leaders urging the ratification of a collective-bargaining agreement *might* behave outrageously toward other union members, no outrageous conduct has been alleged in this case. The substance of plaintiffs' complaint is that material information about the 1979 collective-bargaining agreement was withheld from them. This claim goes to the quality of their union representation and the fairness of their employer's labor practices, issues central to the concerns of federal labor law. Without specific allegations of outrageous conduct on the part of the union or the employer in securing the ratification of the 1979 collective-bargaining agreement, we find the state interest in adjudicating plaintiffs' emotional distress claims too insubstantial to defeat complete preemption.

Accordingly, we affirm the district court's holding that plaintiffs' emotional distress claims, in so far as plaintiffs allege that information was withheld from them, are completely preempted. We reverse the district court's holding that plaintiffs' emotional distress claims, in so far as they refer to defendants' conduct, are not completely preempted.

## V

For the reasons given above, the district court's dismissal of plaintiffs' complaint is AFFIRMED. The court's remand of plaintiffs' emotional distress claims to state court is VACATED. The case is REMANDED with instructions to DISMISS the complaint WITH PREJUDICE in its entirety.