IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 9, 2005 Session

# RALPH ALLEY, ET AL., v. QUEBECOR WORLD KINGSPORT, INC., d/n/a QUEBECOR WORLD HAWKINS, INC.

**Direct Appeal from the Circuit Court for Hawkins County**
**No. CV-151      Hon.  John K. Wilson, Circuit Judge**

---

**No. E2004-01274-COA-R9-CV  - FILED JULY 5, 2005**

---

This is an interlocutory appeal from the Trial Court's refusal to dismiss the action on the grounds that federal laws preempt a state action.  We reverse and dismiss.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHEL SWINEY,  J., joined.

Russell F. Morris, Jr., and Michael S. Moschel, Nashville, Tennessee, for appellant.

W. Lewis Jenkins, Jr., Dyersburg, Tennessee, Douglas T. Jenkins, Rogersville, Tennessee, C. Christopher Raines, Jr., Mount Carmel, Tennessee, Charles R. Terry, Morristown, Tennessee, and Mark S. Stapleton, Rogersville, Tennessee, for Appellees.

## OPINION

In this action the Trial Court overruled defendant's Motion to Dismiss, and defendant filed an Application for Interlocutory Appeal which was granted by the Trial Court and this Court.

Plaintiffs' action alleged that Quebecor was a corporation organized and existing under the laws of California, but with its principal place of business in Kingsport, Tennessee. Plaintiffs worked for the defendant, and alleged that defendant published a notice to them on November 14, 2001, which stated that their plant would be closing as of January 12, 2002.  Plaintiffs

alleged that as of the date of the filing of the Complaint (November 14, 2002) the plant was still open and operating, and was being run mainly by temporary help. Plaintiffs alleged that defendant intentionally, recklessly, or negligently misrepresented its intention to close the plant, and that several other notices had been published extending the deadline for closure. They concluded that they relied on this representation to their detriment in that they relinquished their "recall rights" for a "pittance of their value" thinking the plant would close.

Plaintiffs further alleged that defendant had committed fraud or promissory fraud in making the statement, and that defendant breached its agreement with plaintiffs by failing to close the plant, and failed to deal in good faith with plaintiffs. Plaintiffs sought compensatory damages, as well as punitive damages.

In defendant's Answer, an affirmative defense was raised that plaintiffs' claims were preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, and by the National Labor Relations Act, 29 U.S.C. §151 *et seq.* Other defenses included waiver, statute of limitations, statute of frauds, and failing to exhaust administrative remedies.

Defendant admitted that it issued notice on November 14, 2001, pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 *et seq.*, that it had decided to permanently close the Hawkins County plant. It averred that the notice stated that the plant would be entirely closed before May 1, 2002, and the first separation was anticipated to begin on January 12, 2002. Defendant alleged that the notice also said that if the dates needed to be extended, supplemental notice would be given as soon as possible, and that the closure was a phase down of operations, with several stages of separation.

Defendant admitted the plant was still partially operational as of November 14, 2002, but that "all prepress, quality assurance and pressroom operations were shut down" before the Complaint was filed, as well as "majority of the bindery". Defendant admitted that it had entered into an Effects Bargaining Agreement with plaintiffs' union on November 29, 2001, but denied that plaintiffs' action should be certified as a class action.

Subsequently, defendant filed a Motion to Dismiss, asking the Court to dismiss the action because the claims were preempted by 29 U.S.C. §185 and §151 *et seq.*, and that plaintiffs were barred by the release entered into in the Effects Bargaining Agreement. The Court entered an Order on November 25, 2003, finding that the Motion to Dismiss was not well-taken and defendant appealed.

Issues on appeal are whether the plaintiffs' claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, and the National Labor Relations Act, 29 U.S.C. §151 et seq.; and whether plaintiffs' claims are barred by a general release of claims entered into on behalf of the plaintiffs by their bargaining representative?

Defendant argues that plaintiffs' claims are preempted by Section 301 of the Labor

Management Relations Act, 29 U.S.C. §185, because plaintiffs' state law claims deal with the construction of collective bargaining agreements. Section 301 provides that suits for violation of labor contracts are to be brought in federal district court, and the Supreme Court has ruled that this statute "expresses a federal policy that the substantive law to apply in §301 cases 'is federal law, which the courts must fashion from the policy of our national labor laws.'" *Allis-Chalmbers Corp. v. Lueck*, 471 U.S. 202, 209 (1985), *quoting Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957). Thus, the Supreme Court has held that actions involving labor disputes must be brought under §301 and determined according to federal law, and further that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Id.* at 211.

In this case, the Trial Court denied the Motion to Dismiss which was based on the preemption argument. In reviewing the denial of a Motion to Dismiss, our Supreme Court has stated:

> A Rule 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the sufficiency of the complaint, not the strength of a plaintiff's proof as does, for example, a motion for a directed verdict. The failure to state a claim upon which relief can be granted is determined by an examination of the complaint alone. The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law. The motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. In scrutinizing the complaint in the face of a Rule 12.02(6) motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact therein as true. The motion should be denied unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

*Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994)(citations omitted).

In their Complaint, plaintiffs alleged fraud/intentional misrepresentation or negligent misrepresentation by defendant in its statements regarding its intention to close the plant. As this Court has previously explained:

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury.

-3-

In commercial transactions the law has recognized a less stringent standard of liability for fraudulent misrepresentations than the common law action for deceit. One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. This standard of liability substitutes a reasonable care standard for the common law scienter requirement. In other words, in business transactions, a defendant can be held liable for negligent misrepresentations.

In addition to the above developments, our courts have now recognized a cause of action for promissory fraud. However, as the above cases illustrate, the basis for the action for fraud and deceit is still the misrepresentation of the defendant, whether intentional or negligent, and some damage flowing from a justifiable reliance on the misrepresentation.

*Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 927 (Tenn. Ct. App. 1987)(citations omitted). Thus, in order to prove their claims, plaintiffs must show that they were damaged by their reliance on the alleged misrepresentation.

Plaintiffs allege that they were damaged by the fact that they "relinquished their 'recall rights' for a pittance of their value". In order to establish this, the Court must look to the terms of the CBA and the EBA to determine what those recall rights were, what they were worth, and whether they were relinquished in such a way that plaintiffs were injured.

To determine whether Section 301 preemption exists, the Supreme Court and the Sixth Circuit have stated that the court must look at the state law claim and see if its resolution is dependent on analysis of the terms of a collective bargaining agreement - if so, the claim is preempted by federal law. *See Allis-Chalmers Corporation*.

In *Allis-Chalmers*, an employee brought an action against his employer alleging bad faith in the handling of his disability claim, when the disability plan was administered by the employer pursuant to a CBA. 471 U.S. 202. The Supreme Court held that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Id.* at 213. The Court explained that its analysis had to focus on whether evaluation of the tort claim was "inextricably intertwined with consideration of terms of the labor contract." *Id.* The Court held that since the right asserted derived from the contract, the determination of liability would necessarily involve contract interpretation. Thus, the claim was preempted. *Id.*

This rationale has been followed by other federal courts, including the Sixth Circuit. In *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir. 1994), the Court held that a two-pronged

-4-

test should be used to determine whether §301 preemption applied to a state law claim. The Court explained that it must first determine if proof of the state law claim required interpretation of CBA terms, then it would determine if the right claimed by the plaintiff was created by the CBA. *Id.* If the proof requires contract interpretation and the right arises from the contract, then preemption is warranted. *Id.*, *see also Martin v. Associated Truck Lines, Inc*., 801 F.2d 246 (6th Cir. 1986)(state law misrepresentation claims were preempted because merits of allegations had to be evaluated in light of terms used in CBA); *Bale v. General Telephone Co. of California*, 795 F.2d 775 (9th Cir. 1986)(misrepresentation claims were preempted where proof would require showing that terms of CBA were different than what plaintiffs were told); *Gibson v. AT&T Technologies, Inc.*, 782 F.2d 686 (7th Cir. 1986)(claim that employer withheld information about plant closing at time of offering supplemental benefits, which allegedly deprived employees of layoff allowances provided for in CBA, was preempted); *Moore v. General Motors Corp.*, 739 F.2d 311 (8th Cir. 1984)(employee's fraud and misrepresentation claims were preempted because injury alleged was violation of transfer rights which existed under CBA).

*Adkins v. General Motors Corp.,* 946 F.2d 1201 (6th Cir. 1991), is factually similar, in that plaintiffs alleged that GM and the union colluded in negotiating a CBA which abrogated special seniority rights contained in a prior CBA called the "bridge agreement". Plaintiffs asserted that they were not told that the new CBA terminated their retreat rights, and were specifically told that the new CBA did not affect the "bridge agreement" rights. *Id.* The Sixth Circuit Court held that since damages were a necessary element of plaintiffs' claims, and since the damage alleged was the loss of rights under a CBA, "in order to adjudicate this claim, the court below would have been obliged, at a minimum, to determine that the 'bridge agreement' conferred such rights on the plaintiffs, that the subsequent collective-bargaining agreement abrogated those rights", and thus, because adjudication of the claim was substantially dependent on analysis of the agreements, the claim was preempted. *Id.*

Plaintiffs rely on *Alongi v. Ford Motor Co.*, 386 F.3d 716 (6th Cir. 2004), wherein the plaintiffs alleged that defendant's agent misrepresented to them that their plant was financially secure and would remain open for at least six more years, and that plaintiffs would be guaranteed positions during that time frame. In finding that plaintiffs' claims were not preempted, the Sixth Circuit pointed out that said misrepresentations were made after the CBA was negotiated and ratified, and thus these misrepresentations were individual promises and were not part of the CBA. *Id.* In other words, the allegations did not require the court to apply/interpret terms of the CBA, and therefore the claim was not preempted. *Id.* The Court explained that this situation was different from *Adkins*, where the plaintiffs alleged that they were fraudulently induced to sign a contract which forfeited rights allegedly conferred by another labor contract. *Id.*

The plaintiffs' claims in this case are basically the same as those in *Adkins*, i.e. plaintiffs claim that they were fraudulently induced to give up their "recall rights" under the CBA by entering into a different agreement, based on the company's representation that the plant's closing was imminent. Analysis of plaintiffs' claims would require the court to examine the CBA to determine if such recall rights existed and what they were, and then to examine the subsequent

agreement to determine if plaintiffs relinquished the same and were injured thereby.  Since the proof of the claim would require interpretation of the contract terms, and the right claimed to have been lost arose from the CBA, we conclude, on the foregoing authorities, that the claims are preempted.

Plaintiffs' breach of contract claims are likewise preempted, because the Contract allegedly breached is a collective bargaining agreement, and not an "individual promise" as defined by *Along*i.  Plaintiffs' claims should have been dismissed, and the Trial Court erred in denying defendant's Motion. We reverse the Judgment of the Trial Court and remand, with the cost of the appeal assessed to plaintiffs.

_____

HERSCHEL PICKENS FRANKS, P.J.