**Brenda WELLONS, Plaintiff–Appellant,**

v.

**NORTHWEST AIRLINES, INC., Defendant–Appellee.**

No. 00–1063.

United States Court of Appeals, Sixth Circuit.

Oct. 16, 2001.

Before NORRIS and COLE, Circuit Judges, and HOLSCHUH, District Judge.*

* The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

## OPINION

NORRIS, Circuit Judge.

Plaintiff–Appellant Brenda Wellons ("Wellons") appeals from a district court's order granting summary judgment to Defendant–Appellee Northwest Airlines ("NWA"). Wellons, an African–American woman, claims that circumstantial evidence of discrimination and NWA's denial of her verbal request for a leave of absence constituted (1) race discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.;* (2) fraud and misrepresentation; and (3) intentional infliction of emotional distress.

### I.

Wellons worked part-time for NWA as a reservation clerk from 1988 until May 11, 1993. On May 11, she changed jobs within NWA, working until August 7, 1993, as a "World Club Representative." During this time, Wellons also worked full-time for Blue Cross/Blue Shield ("BC/BS"). On August 8, 1993, Wellons was allegedly injured in a car accident, and, as a result, placed on paid sick leave for four weeks, beginning at least as early as August 12.

Wellons's supervisor, Cheryle Kovach ("Kovach"), learned from one of Wellons's co-workers that Wellons, despite being on sick leave from NWA, was working at BC/BS. Kovach shared this information with a manager, Victor Bernstein ("Bernstein"), who then successfully called Wellons at BC/BS to determine if she was, in fact, working there. Bernstein then sent Wellons a letter, dated September 2, 1993, expressing his concern that he believed she was working for BC/BS while on "no-work status" at NWA. Bernstein's letter also advised her that he expected her to

attend an investigatory meeting in his office on September 14, 1993. Bernstein's concern apparently stemmed from the relevant collective bargaining agreement ("CBA"), which states:

> Any employee on leave of absence who engages in gainful employment without prior written permission from the Labor Relations Department shall forfeit his or her seniority rights and be deemed to have voluntarily resigned.

J.A. at 121.

In a letter dated September 7, 1993, Wellons replied to Bernstein's letter. Wellons admitted to having returned to BC/BS, writing, "I was advised to return to Blue Cross two weeks prior to returning to N.W.A. to allow myself time to continue treatment and re-acclimatize to the stringent pace that I have become accustomed."[1] J.A. at 124.

Sometime between September 7 and September 10, 1993, Wellons claims to have verbally asked Bernstein to grant her a new leave of absence. Wellons stated in her deposition that Bernstein told her that she could not have a leave of absence, recommending instead that she resign voluntarily and re-apply after she finished receiving treatment for injuries stemming from her car accident.

Then, in a letter to Bernstein, dated September 10, 1993, Wellons resigned. Wellons's letter bases her decision on the inability of her acting supervisor to schedule her work hours around the hours that a therapist was available for her treatment (presumably for injuries suffered in the car accident).[2] The letter concludes with, "I understand that this does not m//ake [sic] me ineligible for rehire should I choose to re-apply at another time." In a subsequent letter, dated September 12, 1993, Wellons advised Bernstein that, due to her resignation, she would not attend the September 14 investigatory meeting that he had advised her of in his September 2 letter.

Wellons allegedly re-applied for various positions with NWA four times within a year of her resignation.[3] She claims that she was advised that she would have to wait one year from the time of her resignation pursuant to a rule requiring a one-year waiting period for re-employment of ex-NWA workers. Indeed, NWA has a written policy that employees who resign may not be re-hired for one year.

Wellons filed her complaint on September 9, 1996. Based on diversity, NWA removed the action on October 10, 1996. The district court granted Wellons leave to amend her complaint to include federal claims of race discrimination, claims that she later conceded were barred by the applicable statute of limitations. The district court dismissed Wellons's action, holding that her claims were preempted by the Airline Deregulation Act. *See Wellons v. Northwest Airlines, Inc.,* 999 F.Supp. 941 (E.D.Mich.1996). We reversed the district court, holding that Wellons's state law claims of racial discrimination were not preempted because they were too tenuously related to airline rates or services.

---

1. The implication that the advice to return to work was health-related is contradicted by Wellons's deposition, in which she stated that BC/BS asked her to return on September 1 or 2 because BC/BS's employees were preparing to strike. Only after BC/BS requested her return, did she call her doctor. In her deposition, the only advice Wellons attributed to her doctor was his permission for her to work at BC/BS so long as she did not drive.

2. In some contrast to her letter, Wellons, on appeal, attributes her resignation to Bernstein's representation that she could not have a new leave of absence. Appellant's Br. at 6.

3. Neither party cites the record for evidence of these applications.

*See Wellons v. Northwest Airlines, Inc.,* 165 F.3d 493, 496 (6th Cir.1999).

Upon remand, the district court granted NWA's motion for summary judgment. The district court found that (1) Wellons's state law claim for fraud was preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"), because resolution of the claim required it to interpret the CBA; (2) her discrimination claims were partially preempted by the RLA to the extent that they were premised on Bernstein's refusal to grant her a leave of absence and/or her supervisor's refusal to change her work hours [4]; (3) her discrimination claims were barred by the applicable three-year statute of limitations to the extent she based them on incidents occurring while she was a World Club representative; (4) she failed to establish a prima facie case of race discrimination under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and (5) she failed to introduce any evidence in support of her claim of intentional infliction of emotional distress.

## II.

We review a grant of summary judgment de novo. *Birgel v. Bd. of Comm'rs,* 125 F.3d 948, 950 (6th Cir.1997). We view the evidence in the light most favorable to the non-moving party to determine whether there is a genuine issue as to any material fact. *Id.* Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists where the "non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Preemption by the Railway Labor Act

■ The airline industry is subject to the RLA. 45 U.S.C. § 181. In seeking to promote stability in labor-management relations, the RLA establishes various arbitral mechanisms to resolve disputes involving interpretations of a CBA. 45 U.S.C. §§ 151a, 184. Thus, where resolution of a state-law claim requires interpretation of a CBA, the Supreme Court has concluded that such a claim is preempted by the RLA. *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 266, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (holding that an airline employee's state-law wrongful discharge claims were independent of the CBA and therefore not preempted by the RLA). In reaching this conclusion, the Court adopted the preemption standard of *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), a case involving preemption under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). *Hawaiian Airlines,* 512 U.S. at 263, 114 S.Ct. 2239. *Lingle* held that section 301 preempted state-law claims whose resolution depended on an interpretation of a CBA. *Lingle,* 486 U.S. at 405–06, 108 S.Ct. 1877.

In light of *Lingle,* the Sixth Circuit has developed a two-prong test for determining whether section 301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by

**4.** Wellons has forfeited her claim that the refusal to schedule her shift around therapy treatment was racially motivated, as she does not raise the argument in her brief on appeal.

state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994) (citations omitted); *see also Adkins v. General Motors Corp.*, 946 F.2d 1201, 1209–10 (6th Cir.1991) (concluding section 301 preempted plaintiffs' claims that transfer rights under bridge agreement were fraudulent); *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1038 (6th Cir.1989) (finding both triggers of section 301 preemption present where plaintiff's allegation that employer fraudulently withheld favorable file in re-employment context was essentially a claim that employer failed to abide by the CBA). Since *Hawaiian Airlines* explicitly equates *Lingle*'s section 301 preemption standard with that of the RLA, we apply *DeCoe*'s interpretation of *Lingle* to the RLA preemption issues presently before us.

### 1. Preemption of fraud claim

■ Relying on *Hawaiian Airlines* and *DeCoe*, the district court held that the RLA preempted Wellons's fraud claim because the basis of her claim-that her supervisor, Bernstein, fraudulently told her she could not have a new leave of absence-involved the right to a leave of absence, a right created by the CBA.

On appeal, Wellons does not specifically dispute the district court's characterization of her fraud claim as being a dispute over a CBA-created right, nor does she attempt to explain why the facts of her case warrant a different outcome under *Hawaiian*

*Airlines* and *DeCoe*. Rather, without further explanation or citation to any authority, Wellons broadly contends that her right not to be misled about her right to receive a leave of absence does not require an interpretation of the CBA.

■ We disagree. Under Michigan law, one of the elements of fraud requires proof that a defendant made a material representation that was false. *M & D, Inc. v. W.B. McConkey*, 231 Mich.App. 22, 27, 585 N.W.2d 33 (Mich.Ct.App.1998). In this case, the CBA addresses eligibility requirements for a leave of absence. Hence, Wellons's fraud claim fails the first prong of *DeCoe* and is preempted by the RLA because an element of her claim requires an interpretation of the CBA to determine the veracity of Bernstein's alleged statement that she could not have a new leave of absence.[5]

### 2. Preemption of discrimination claim

The district court found Wellons's claim of discrimination preempted by the RLA to the extent it was based on Bernstein's alleged statement that she could not have a leave of absence. Although Wellons disputes this finding on appeal, we need not decide the issue because, as discussed below, she clearly fails to establish a prima facie case of race discrimination.

### B. Statute of Limitations

■ The statute of limitations for Elliott–Larsen Act claims is three years. *See* MICH. COMP. LAWS § 600.5805(9); *Merriweather v. IBM*, 712 F.Supp. 556, 564 n. 8 (E.D.Mich.1989). Since Wellons

---

5. On appeal, Wellons also alleges that she was misled about her right to use the employee cafeteria. In her brief in opposition to NWA's motion to dismiss, she claimed that she never received the necessary pass to use the employee cafeteria. However, this allegation does not appear in her complaint, nor was it addressed by the district court. Accordingly, this twist to her fraud claim is not appropriately before us. Moreover, even if this specific claim were before us, we note that nothing in the record supports this bare assertion.

filed suit on September 9, 1996, all allegations of discriminatory acts occurring before September 9, 1993, are barred by the statute of limitations absent some exception.

Wellons invokes the "continuous violation doctrine" to argue that the district court erred by finding that all incidents of alleged discrimination which took place while she was a World Club representative (May 11–August 7, 1993) were barred by the statute of limitations. In support of her argument, Wellons relies on *Roberts v. North American Rockwell,* 650 F.2d 823, 827–28 (6th Cir.1981), which held that where a company has a long-standing policy of discrimination, repeated attempts to gain employment or promotions may each trigger the running of a new limitations period. *Roberts,* 650 F.2d at 827. We have subsequently limited *Roberts,* interpreting the continuous violation doctrine to require that a plaintiff prove some specific discriminatory act within the limitations period, not merely the existence of a discriminatory policy, to show a continuing violation. *Dixon v. Anderson,* 928 F.2d 212, 217 (6th Cir.1991).

After viewing the evidence in the light most favorable to Wellons, we conclude that she fails to make the necessary showings to invoke the continuous violation doctrine and thereby avoid the statute of limitations for alleged incidents occurring

before September 9, 1993. Wellons does not point to any evidence to suggest that NWA had a policy of discrimination. Moreover, the only alleged acts of discrimination that occurred within the three-year limitations period are Wellons's attempts at being re-hired and Bernstein's alleged denial of her verbal request for a leave of absence.[6] It is unreasonable to infer that these acts were discriminatory; not only does Wellons concede that there is no direct evidence of discrimination, NWA's actions clearly fell within its nondiscriminatory written policies.[7] Finally, pursuant to the CBA, Wellons was deemed to have voluntarily resigned before the three-year limitation period.[8]

Thus, Wellons's failure to show a pattern of discrimination extending into the limitations period prevents the application of the continuous violation doctrine. Accordingly, all of the alleged discriminatory events that took place while Wellons was a World Club Representative, including her claim that she was never given a security pass needed to access the employee cafeteria at NWA, are barred by the statute of limitations.

### C. Burden–Shifting Analysis under McDonnell Douglas

Wellons also contests the district court finding that, preemption aside, she

---

6. The date of Bernstein's alleged denial of Wellons's request is unclear. According to her deposition, she wrote her letter of resignation after Bernstein told her that she could not have a leave of absence. Based on the date of this letter, September 10, Bernstein's alleged denial occurred on or before September 10. The most favorable inference that can be drawn, then, is that Bernstein's alleged statement occurred on September 10, within the three-year limitations period.

7. NWA's Human Resource Policy expressly provides that employees who have resigned in good standing may be reemployed provided

"they have not been employed by NWA for one year following resignation." J.A. at 135. The CBA also specifies that requests for a leave of absence be in writing, which Wellons's was not.

8. Wellons does not deny that she returned to BC/BS while on leave from NWA. And, under the CBA, "any employee on leave of absence who engages in gainful employment without prior written permission from the Labor Relations Department shall forfeit his or her seniority rights and be deemed to have voluntarily resigned." J.A. at 121.

failed to establish a prima facie case of race discrimination under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Since Wellons concedes that she has no direct evidence of race discrimination, she bases her discrimination claim on circumstantial evidence, alleging that two similarly situated white employees received leaves of absence. She also claims that NWA's stated reason for not granting her a second leave of absence-her work for another employer during her first leave of absence in contravention to the CBA-was pretext because it had always known that she worked for another employer.

Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination, at which point the employer must proffer a nondiscriminatory reason for the challenged action. The burden then shifts back to the employee to show pretext. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817[9]. To establish a prima facie case of disparate treatment, Wellons must show that she was treated differently from similarly situated non-minority employees. *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 699–700, 568 N.W.2d 64 (1997). "Similarly situated" means that allegedly comparable employees are "nearly identical" in "all relevant aspects." *Id.; see also Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994) (noting in Kentucky reverse sex discrimination case that a plaintiff's showing of being "similarly situated" requires proof that "all of the relevant aspects of his employment situation were 'nearly identical' to those of [the comparable]").

Wellons does not show that the employees she points out were similarly situated to her and thereby fails to create an inference of disparate treatment. There is no evidence that the two employees whom she identifies as being similarly situated had breached the CBA. In fact, she utterly fails to explain why the investigation into whether she was working elsewhere while on a leave of absence, in contravention to the CBA, did not differentiate her treatment from that received by the two alleged comparables. Wellons also does not dispute the district court's finding that one of her alleged comparables, James Manolakis, was not under investigation. Moreover, unlike Wellons's oral request for a second leave of absence, Manolakis's request was written. Similarly, Wellons presents no evidence to show that Supervisor Kovach, her second comparable, was under investigation at the time that she was granted a medical leave of absence.[10] These circumstances, particularly the investigation of Wellons's breach of the CBA and the consequential status of being "deemed to have voluntarily resigned," *see supra* note 8 and accompanying text, leads us to conclude that Manolakis and Kovach were not similarly situated to Wellons. Hence, Wellons

**9.** We note that the evidentiary scheme at summary judgment under Michigan law is identical to that of *McDonnell Douglas*. *See Merriweather v. IBM*, 712 F.Supp. 556, 564 (E.D.Mich.1989) (citing *Clark v. Uniroyal*, 119 Mich.App. 820, 825, 327 N.W.2d 372 (Mich. Ct.App.1982)).

**10.** Wellons's reference to Kovach as a "similarly situated employee" is apparently a novel argument on appeal. Kovach's name does not appear in Wellons's complaint, in her brief in opposition to NWA's motion to dismiss, or in the district court's opinion. In fact, the district court indicated that Wellons identified, in addition to Manolakis, Kimberlee Osorio as a similarly situated employee. On appeal, Wellons has apparently abandoned her claim that Osorio was re-hired less than one year after she resigned. Osorio's name does not appear in Wellons's brief, nor does Wellons contest the district court's finding that she presented no evidence to refute Osorio's affidavit that Osorio did not resign from her position.

fails to establish a prima facie case of disparate treatment.

Finally, even if she had established a prima facie case, Wellons failed to show that NWA's legitimate, non-discriminatory reasons for its actions were mere pretext. As the district court summarized,

> Wellons did not apply in writing for a leave as required by the CBA, and Wellons was under investigation regarding whether she was working elsewhere [while on leave] at the time she requested [a second] leave from her supervisor[, in contravention to the CBA]. Wellons was not rehired within one year because NWA has a policy that employees who resign may not be re-hired for one year.... Furthermore, NWA contends that Wellons was not qualified for any of the jobs for which she applied within one year following her resignation.

District Court Opinion, Dec. 17, 1999, at 4. Wellons presents no evidence to show that these reasons were pretext intended to mask race discrimination. Based on this failure and her failure to establish a prima facie case of disparate treatment, we conclude that the district court correctly granted summary judgment to NWA on Wellons's claim of race discrimination.

### D. Intentional Infliction of Emotional Distress

■ Intentional infliction of emotional distress exists where a defendant's conduct is "extreme and outrageous," "intentional or reckless," and causes "severe emotional distress." *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985). Without any further analysis, Wellons simply asserts on appeal that "Northwest's conduct as alleged by Appellant and supported by reasonable inference from the evidence, was ... sufficient to support her claim of intentional infliction of emotional distress." Appellant's Br. at 12. By not citing any specific evidence, however, Wellons confirms the district court's find-ing that she has failed to introduce any evidence to satisfy the high standard applicable to her claim of intentional infliction of emotional distress. Even when viewing the facts in the light most favorable to Wellons, we conclude that she does not raise a genuine issue of material fact that NWA's conduct was facially extreme and outrageous or that it caused her severe emotional distress.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to NWA.