## LOEWEN GROUP INTERNATIONAL, INCORPORATED, Plaintiff–Appellant,

### v.

### William J. HABERICHTER, Defendant–Appellee.

### No. 94–3797.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1995.

Decided Sept. 18, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 17, 1995.

Kevin E. White (argued), Catherine Wozniak Joyce, Susan A. Pipal, Winston & Strawn, Chicago, IL, for plaintiff-appellant Loewen Group International, Incorporated.

Elizabeth A. Knight, Patrick J. Fanning (argued), Kathryn M. Reidy, Knight, Hoppe, Fanning & Knight, Des Plaines, IL, for defendant-appellee William J. Haberichter.

Before BAUER, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Loewen Group International, Inc. ("Loewen") appeals an order of the district court granting summary judgment in favor of its former employee, William J. Haberichter ("Haberichter"). Loewen sued Haberichter in federal court for breach of his employment agreement (Count I), breach of a covenant not to compete (Count II), breach of fiduciary duty (Count III), and injunctive relief (Count IV). The district court held that Loewen's suit was preempted by section 301 of the Labor Management Relation Act, 29 U.S.C. § 185 ("LMRA"). We reverse.

## I. Background

Loewen is incorporated in the state of Delaware with its principal place of business in Covington, Kentucky. The company owns and operates among other things funeral homes and cemeteries. In 1992, Loewen acquired the funeral home business of Donovan and Schaer Funeral Homes, P.C. ("D & S"). D & S has two locations, one in Des Plaines, Illinois and one in Arlington Heights, Illinois. Haberichter was an assistant manager at D & S's Arlington Heights location and part owner (5%) of that facility at the time of the purchase.

D & S, like many small funeral home businesses, was family-operated and relied

heavily on the good will and local contacts of its employees. Consequently, Loewen, as a condition of the purchase, negotiated an agreement with certain key management employees who agreed to continue with the business. As part of this acquisition, Loewen also agreed to enter similar agreements with other management employees, including Haberichter, at the election of these other employees. Haberichter agreed to this arrangement and in February, 1992 signed an individual employment contract with Loewen under which he agreed to work for Loewen for at least five years at an annual salary of $52,000.00 and agreed to refrain from competing with Loewen within a ten-mile radius of the facility for a period of ten years from the date of the purchase agreement or for three years immediately following the date that his employment terminates. As separate consideration for the covenant not to compete, Haberichter received $75,000.00. In addition, Haberichter was paid more than $200,000.00 for his partial ownership interest in the facility.

As Loewen tells it, the ink had barely dried on the employment agreement before Haberichter began making plans to set up a competing funeral home. Haberichter allegedly compiled records and information regarding families that D & S had served in Arlington Heights, prepared a business plan and financial projections for his facility, and began getting the financing and permits ready to launch a new funeral home. Soon news began spreading that a new facility in the area was being developed within ten miles of both D & S facilities. Its owners, however, had never been publicly disclosed. In early November, 1993, Loewen learned that it was Haberichter who was establishing the competing business. When confronted with this news, Haberichter admitted that it was true and then attempted, based on his employment agreement with Loewen, to give 90 days notice and resign. He also demanded full pay and benefits for the 90–day peri-

od. Loewen, however, rejected his resignation and instead terminated Haberichter for cause under the terms of the agreement.

Loewen then sued Haberichter in federal district court under diversity jurisdiction for breach of the employment agreement (Count I), breach of the covenant not to compete (Count II), breach of fiduciary duty (Count III), and for injunctive relief (Count IV). Haberichter responded with a motion to dismiss Loewen's complaint, arguing that its claims were preempted under § 301 of the LMRA. Haberichter asserted that he was a member of the union representing funeral directors and argued that resolution of Loewen's state law claims required the court to interpret the collective bargaining agreement entered into between the union and D & S.[1] The district court converted Haberichter's motion to a motion for summary judgment and requested that the parties brief the issues stemming from Haberichter's union status. Following briefing, the court found that there may be potential conflicts between the collective bargaining agreement and Haberichter's individual employment contract and therefore concluded that Loewen's state law contract claims were preempted under § 301. On this basis the district court granted summary judgment for Haberichter.

## II. Analysis

■ The district court in this case granted summary judgment on all four of Loewen's state law claims based on its view that they were preempted under § 301 of the LMRA. We review a grant of summary judgment *de novo*, viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir.1992). We must be satisfied that there is no genuine issue of material fact and that the moving

---

**1.** Haberichter is a member of the Auto Livery, Chauffeurs, Embalmers, Funeral Directors, Apprentices, Ambulance Drivers and Helpers, Taxicab Drivers, Miscellaneous Garage Employees, Car Washers, Greasers, Polishers and Wash Rack Attendants Union Local No. 727 which is affiliated with the International Brotherhood of Team-

sters, C.W. and H. of A. ("Teamsters"). D & S pays membership dues on behalf of its employees to the Teamsters. D & S is also a member of the Funeral Directors Service Association of Greater Chicago, which, among other things, represents area funeral home owners in collective bargaining with the Teamsters.

party is entitled to judgment as a matter of law. *Id.*

## A. § 301 Preemption

The Supremacy Clause of Art. VI of the United States Constitution grants to Congress the power to preempt state law. *Kohl's Food Stores, Inc. v. Hyland,* 32 F.3d 1075, 1077 (7th Cir.1994). Congress exercised this power by enacting § 301(a) of the LMRA, 29 U.S.C. § 185(a), which provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

This section provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body of federal law for the enforcement of these agreements. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988) (citing *Textile Workers Union of Amer. v. Lincoln Mills of Ala.,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957)). In order to ensure uniform interpretation of collective bargaining agreements, Section 301 requires that federal rules of law be applied. *Id.* at 403–04, 108 S.Ct. at 1880 (citing *Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of Amer. v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) ("Teamsters")).

■ In order to determine whether a party's state law claims are preempted under this section, we look to see whether the resolution of the claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement. *Lingle,* 486 U.S. at 405–06, 407, 409–10, 108 S.Ct. at 1881, 1882, 1883. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct.

2425, 2431, 96 L.Ed.2d 318 (1987) (quoting *International Bhd. of Elec. Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)).

■ This is relatively broad language, but the Supreme Court has made clear that preemption is not to be applied in every situation where a collective bargaining agreement is part of the picture. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). For example, it is clear that the existence of a remedy in a collective bargaining agreement does not deprive a party of separate independent remedies available under state law. *Lingle,* 486 U.S. at 409–10, 108 S.Ct. at 1883. "[Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409, 108 S.Ct. at 1883. Even if the state law claim would require addressing the same set of facts, therefore, such claim is independent of a collective bargaining agreement for preemption purposes. *Id.* at 410, 108 S.Ct. at 1883.

Further, the Court has stated that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* —— U.S. ——, ——, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994); *see also Milne Employees Ass'n v. Sun Carriers,* 960 F.2d 1401, 1409–10 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993) (examination of collective bargaining agreement to see if claims are preempted is not "interpretation" for purposes of preemption). The Court then took pains to stress that "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement that decides whether a state cause of

action may go forward" and also underscored that "§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas,* —— U.S. at ——, 114 S.Ct. at 2078 (cites omitted); *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882 (elements of claim examined to see if preemption applies). Rather,

> the pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,' nor by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.

*Livadas,* —— U.S. at ——, 114 S.Ct. at 2078 (citations omitted).

The Court acknowledged that the language used in its decisions interpreting § 301, could be read broadly and noted that this has led the Courts of Appeals to a variety of conclusions in applying these principles. *Id.* at n. 18. And while the Court specifically did not address these varied situations, it did indicate that preemption is not always warranted whenever concededly independent state law litigation may nonetheless entail some application of a collective bargaining agreement. "Holding the plaintiff's cause of action substantively extinguished may not ... always be the only means of vindicating the arbitrator's primacy as the bargained-for contract-interpreter." *Id.; see also id.* at n. 17 (while contract-interpretation disputes must be resolved in the bargained-for arbitral realm, § 301 does not disable state courts from interpreting the terms of collective-bargaining agreements in resolving nonpre-empted claims); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 508, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962) (state courts have concurrent jurisdiction over § 301 claims); *Teamsters,* 369 U.S. at 102, 82 S.Ct. at 576 (state and federal courts must apply federal law in deciding these claims). Therefore, when the collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption.

■ We now turn to the case at hand. In order to see if Loewen's state law claims turn on a portion of the collective bargaining agreement, we first examine the elements of each of Loewen's state law claims. *Talbot,* 961 F.2d at 661. In Count I of its complaint, Loewen alleges that Haberichter breached the terms of his individual employment agreement entered into in February 1992. In Count II, Loewen alleged that Haberichter breached his covenant not to compete. In order to prove these claims, Loewen would need to prove (1) the existence of the contract and covenant, (2) performance by Loewen (the plaintiff) of the conditions imposed on it by the contract and covenant, (3) breach of the contract and covenant by Haberichter (the defendant), and (4) damages. *Payne v. Mill Race Inn,* 152 Ill.App.3d 269, 105 Ill.Dec. 324, 327, 504 N.E.2d 193, 196 (1987). Only a quick glance at these elements is needed to find that no resort to the collective bargaining agreement is required here in order to resolve the claims asserted. Rather, these elements merely require an inquiry into the behavior of the parties. As the Court has said, "purely factual inquiries pertain[ing] to the conduct of the employee and the conduct and motivation of the employer ... [do] not turn on the meaning of any provision of a collective-bargaining agreement." *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1881.

■ And the same goes for Count III, Loewen's claim for breach of fiduciary duty. To prove this claim, Loewen would need to present facts demonstrating that Haberichter was its employee and that, while an employee, Haberichter worked against Loewen's interests. *Cf. E.J. McKernan Co. v. Gregory,* 252 Ill.App.3d 514, 191 Ill.Dec. 391, 403, 623 N.E.2d 981, 993 (1993). This Loewen could do easily without resort to the collective bargaining agreement. The collective bargaining agreement here did not create the employment relationship between the parties.

That was created by the individual employment contract entered into independently in February 1992. And there is no other nexus between the rights alleged to be violated here and the collective bargaining agreement.

Finally, in Count IV Loewen requests injunctive relief premised on the violations alleged in Counts I–III. But of course if the collective bargaining agreement was not implicated in the prior counts, then neither will it be implicated here.

■ We are left then with the only colorable assertion raised by Haberichter—that the provisions of the collective bargaining agreement somehow conflict with the provisions of his independent employment contracts and other state law duties and that this provides him with a substantive defense to the enforcement of those contracts and duties. The rule that Haberichter relies on for this argument was mentioned by the Supreme Court in *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1943). There the Court stated that the provisions of an individual employment contract "cannot subtract from collective ones ... We know of nothing to prevent the employee's, because he is an employee, making any contract provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice." *Id.* at 339, 64 S.Ct. at 581. A collective bargaining agreement therefore supersedes an individual employment contract to the extent that they are inconsistent. *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561 (9th Cir.), *cert. denied*, 502 U.S. 865, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991); *Bale v. General Telephone Co. of California*, 795 F.2d 775, 779 (9th Cir.1986); *Malia v. RCA Corp.*, 794 F.2d 909, 912–13 (3d Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 696 (1987).

In mounting a defense along these lines, Haberichter asserts that an examination of the collective bargaining agreement is necessary to determine if any such conflicts exist and what effect, if any, such conflicts may have on the claims raised by Loewen. Such an examination, Haberichter asserts, will re-quire the court to interpret the agreement, thereby triggering § 301 preemption.

This argument fails for two reasons. First, as explained above, the Supreme Court has made clear that not all cases which tangentially touch collective bargaining agreements call for § 301 preemption. *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911. Rather, the Court has found preemption only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a collective bargaining agreement. *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430. *Allis–Chalmers Corp.*, 471 U.S. at 210, 105 S.Ct. at 1910. It is true that the Court has indicated that in some situations a plaintiff's claims cannot be resolved without substantively interpreting the terms of a collective bargaining agreement raised as a defense. *Cf. Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. at 2432–33; *Livadas*, —— U.S. at —— n. 18, 114 S.Ct. at 2078 n. 18 (*e.g.*, where a term in the collective bargaining agreement may or does confer a defense on the employer, perhaps because the employee or his union has negotiated away the state law right). But the Court de-emphasized the importance of such defenses under § 301 and suggested that preemption may not be the only means of vindicating the arbitrator's primacy in these situations. *Livadas*, —— U.S. at —— n. 18, 114 S.Ct. at 2078 n. 18.

■ Second, and more to the point here, merely examining the collective bargaining agreement to determine whether a conflict actually exists is not "interpreting" the collective bargaining agreement for § 301 preemption purposes. *Milne*, 960 F.2d at 1409–10. "If it were, the section 301 pre-emption doctrine would swallow the rule that employees covered by collective bargaining agreements are entitled 'to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement.'" *Id.* at 1410 (quoting *Caterpillar*, 482 U.S. at 396, 107 S.Ct. at 2431) (emphasis in original). It is rather the substantive examination for the purposes of actually deciding the outcome of the action that has

the potential to invade the primacy of the arbitrator. A quick look in order to determine that no such substantive evaluation is necessary—that is, to see if the allegations of conflict are well founded or have a reasonable chance of success—does not actually decide anything and therefore poses no danger of inconsistency in interpretation.

In this case, Haberichter makes almost no effort to identify a conflict between Loewen's state law claims and the collective bargaining agreement. After combing his brief, we were able to identify only the three assertions outlined in the district court's order. We examine them in turn.

 First, Haberichter argues that his individual employment contract provides that he could be discharged for "cause" and then specifically defines "cause" to include, as one of four specific definitions, "actively and intentionally pursuing interests of a competitor to the detriment of the financial interests of Company or Chapel." Haberichter then points out that the collective bargaining agreement also provides for discharge for "just cause," but fails to further define just cause: "An employer member shall not discharge any employee without just cause." But there is no conflict here. The term "just cause" in the collective bargaining agreement is obviously broad enough to encompass the individual contract term here. This contract term therefore cannot logically be interpreted to expand upon and therefore conflict with the parallel term used in the collective bargaining agreement. In addition, we note that a narrow and specific definition of "cause" grants the employee more protection than a broad, blanket term like that used in the collective bargaining agreement. The individual agreement negotiated between the parties thus gives more rights to Haberichter and restricts Loewen's options in terminating him. The employment contract is not only consistent with but also more generous than the collective bargaining agreement.

Next, Haberichter contends that the covenant not to compete conflicts with the collective bargaining agreement. Here he points to Article X, Section 3 of the collective bargaining agreement which explains that employees have rights not to perform jobs not within the jurisdiction of the collective bargaining agreement "except that the employees may perform jobs the same as or substantially similar to those covered by this Agreement for employers who have a substantially similar Agreement with the Union."[2] Haberichter asserts that this provision gives him an unlimited right to "freedom of employment" including the right to set up a competing business while employed by Loewen. The covenant not to compete, he asserts, conflicts with this freedom.

There are several things wrong with this argument, not the least of which is Haberichter's ridiculously broad reading of this provision. We need not determine the meaning of this provision here, though, since no matter how it is defined, Haberichter's activities do not fall within its scope. Haberichter after all did not seek to work for another union employer in this case. His objective, by all accounts, was to become one himself. And there is also no indication that Haberichter's new funeral home would have had a similar collective bargaining agreement with the union. Without meeting even these superficial requirements, this provision would not apply to Haberichter's activities and therefore no conflict arises. We also note that even if Haberichter's activities could be construed to fall within this provision, the collective bargaining agreement itself contemplates that an employer may fire an employee for "disloyalty to [an] employer member." Surreptitiously setting up a competing business cannot be considered loyalty to

**2.** Section 3 reads in full:

PROTECTION OF EMPLOYEES' RIGHTS. There shall be no Article or provisions in this Agreement prohibiting the Union from engaging in strike or other economic actions whenever the Union deems it necessary to protect the guarantees and intents embodied in this Agreement and also to protect the employees' rights not to perform jobs not within the jurisdiction of this

Agreement except that the employees may perform jobs the same as or substantially similar to those covered by this Agreement for employers who have a substantially similar Agreement with the Union. The representative of the Employer or the Union shall have the right to resort to arbitration under the arbitration provisions of this Agreement in respect to any dispute which may or has given rise to action as set forth above.

one's current employer under any definition of the term. And as a matter of contract construction, a document should be read to give effect to all its provisions and to render them consistent with each other. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, ––– U.S. –––, –––, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995).

■ Finally, Haberichter alleges that there may be a conflict between his individual employment contract and the collective bargaining agreement with regard to Loewen's breach of duty claim. However, he fails to elaborate on this assertion, also fails to identify what provision of the collective bargaining agreement is at issue, and further fails to identify what state law duty it conflicts with. That is enough to defeat his claim here. *Roland v. Langlois*, 945 F.2d 956, 963 (7th Cir.1991) (appellate court reviews arguments; it does not construct them). And as noted above, Loewen based Count III of its complaint not on the collective bargaining agreement but on independent state grounds. That is clearly permissible. Even if the collective bargaining agreement does contain duties similar to those that form the basis of Loewen's state law action, Loewen "had a choice whether to obtain redress for [Haberichter's] alleged misconduct under either the collective bargaining agreement or state law." *Kohl's Food Stores*, 32 F.3d at 1078.

In sum, we find that none of the elements of Loewen's state law claims require an interpretation of the collective bargaining agreement and also find that the alleged conflicts asserted by Haberichter here are either nonexistent or completely unreasonable. There is therefore no need to depend, let alone substantially depend, upon any provision of the collective bargaining agreement when engaging in an analysis of Loewen's state law claims. Accordingly, we hold that it was error for the district court to rule these claims preempted under § 301 of the LMRA.

**B. *Garmon* Preemption**

■ In the alternative, Haberichter argues that these claims are preempted under *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The district court did not reach this issue having determined that § 301 preemption applied. But we may affirm on any ground fairly supported by the record, *Frederick v. Marquette Nat. Bank*, 911 F.2d 1, 2 (7th Cir. 1990), and therefore, in order to be complete, proceed to address this issue. In this case, however, we find that no *Garmon* preemption applies.

■ According to *Garmon*, when an activity is arguably prohibited as an unfair labor practice under § 8 of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA"), state and federal courts must defer to the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). *Talbot*, 961 F.2d at 659. To invoke *Garmon* preemption here Haberichter is required to demonstrate that his case is one that the NLRB could legally resolve in his favor. *Id.* at 660. "A party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board." *International Longshoremen's Ass'n, AFL–CIO v. Davis*, 476 U.S. 380, 395, 106 S.Ct. 1904, 1914, 90 L.Ed.2d 389 (1986) (citation omitted). The party requesting preemption must demonstrate that his case is one that the NLRB could reasonably decide in his favor. *Talbot*, 961 F.2d at 660.

■ Further, even if Loewen's conduct is arguably prohibited under § 8 of the NLRA, it will not be preempted under *Garmon* unless "the controversy presented to the state court is identical with that which could be presented to the Board." *Belknap, Inc. v. Hale*, 463 U.S. 491, 510, 103 S.Ct. 3172, 3183, 77 L.Ed.2d 798 (1983); *Talbot*, 961 F.2d at 661. It is only when the controversies are identical that "a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." *Sears, Roebuck & Co. v. San Diego County Dist. Council of*

*Carpenters,* 436 U.S. 180, 197, 98 S.Ct. 1745, 1757, 56 L.Ed.2d 209 (1978).

 Section 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5), makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of § 159(a) of this title." In this case, Haberichter asserts that it was a violation of § 8(a)(5) for Loewen to have negotiated and entered into the individual employment contracts at issue here. Haberichter, however, substantially misconstrues this section. As noted above, the Supreme Court has specifically recognized the validity and utility of permitting the very kind of individual employment agreements that are the subject of this dispute. To reiterate: "We know of nothing to prevent the employee's, because he is an employee, making any contract provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice." *J.I. Case Co.,* 321 U.S. at 339, 64 S.Ct. at 581. As the Court has stated, "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers,* 471 U.S. at 212, 105 S.Ct. at 1912. And at any rate, "*J.I. Case* does not stand for the proposition that all individual employment contracts are subsumed into, or eliminated by, the collective bargaining agreement.... [A] plaintiff covered by a collective bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights." *Caterpillar,* 482 U.S. at 396, 107 S.Ct. at 2431 (emphasis in original). Therefore, as long as the employer is not attempting to circumvent a union or undermine a collective bargaining agreement, *see Medo Photo Supply Corp. v. N.L.R.B.,* 321 U.S. 678, 684, 64 S.Ct. 830, 833, 88 L.Ed. 1007 (1944) (negotiations with indi-

vidual employees with intent to induce them to abandon union); *Inland Tugs, a Div. of Amer. Com. Barge Line Co. v. N.L.R.B.,* 918 F.2d 1299, 1311 (7th Cir.1990) (law looks unfavorably on employer's attempt to circumvent union representative), it is permissible to negotiate more favorable contracts with individual members.

 Here, the individual employment agreements that form the basis of Loewen's claims were negotiated in compliance with these standards. We have already noted that there are no inconsistencies between the individual employment contract, the covenant not to compete, and the collective bargaining agreement (at least none presented by Haberichter) and further note that these agreements were specifically drafted to co-exist with the collective bargaining agreement.[3] The collective bargaining agreement itself also acknowledges that employees will seek additional contracts and better terms.[4] So clearly there was no intent to subvert union efforts here. And we also note that the terms of the February 1992 agreements are considerably more generous than the minimums guaranteed in the collective bargaining agreement. We cannot help wondering if Haberichter would be so eager to argue against the availability of individual contracts if he did not find himself as defendant in this suit. We find therefore that Haberichter will be unable to demonstrate that Loewen's conduct is arguably prohibited under § 8 of the NLRB.

It is also obvious that controversy presented by the state claims is not identical to those that would be presented to the NLRB on these facts. *Talbot,* 961 F.2d at 661. In determining whether Loewen impermissibly negotiated a contract to subvert the union agreement, the Board would need to examine the facts surrounding the development of the individual contracts and determine whether

---

**3.** Paragraph 11(b) of Haberichter's employment contract dealing with employee benefits, for example, states that:

 To the extent any provisions of the Assistant Manager's Union Collective Agreement apply to and improve upon the subject matter of paragraph (a), the said Collective Agreement provisions apply.

**4.** For example Article V, Section 1 states that:

 Employees who have been receiving benefits and/or wage rates over and above those stated in the Agreement ... shall continue to receive them hereunder, and shall receive in addition all benefits and/or wage increases agreed upon and described in the present Agreement.

Loewen engaged in subversive behavior. But in Loewen's state law action, the focus would be on the content of the agreements and Haberichter's behavior in allegedly violating them. *Cf. Belknap,* 463 U.S. at 510–12, 103 S.Ct. at 3183–84 (workers' breach of contract claim not identical to unfair labor issue involving use of replacement workers); *Milne,* 960 F.2d at 1416–17 (failure of employer to bargain in good faith not identical to fraud and emotional distress issues raised by employees). Thus, despite the commonality of some underlying facts, *id.* at 1417, it would not interfere with the NLRB's determination of matters within its scope of expertise to allow Loewen to pursue its state law claims below. We conclude therefore that *Garmon* preemption is also unavailable in this case.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded with instructions to reinstate Loewen's state law claims on the merits.