**Russell JOHNSON, et al., Plaintiffs,**

v.

**DELPHI CORPORATION, Defendant.**

No. C–3–02–313.

United States District Court,
S.D. Ohio,
Western Division.

March 25, 2003.

Dwight Allan Washington, Washington & Hollingsworth, Dayton, OH, for plaintiffs.

Colleen A. Deep, Robert William Edmund, Jones Day Reavis & Pogue, Columbus, OH, Andrew M. Kramer, Jones Day Reavis & Pogue, Washington, DC, for defendant.

EXPANDED OPINION; DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO DISMISS, TREATED AS ONE FOR SUMMARY JUDGMENT (DOC. # 6); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

Plaintiffs[1] are experienced skilled tradesmen (e.g., electricians, plumbers, millwrights, mechanical repairmen, and tinners), who were hired by Defendant Delphi Chassis Systems ("Delphi") in 1999 and 2000.[2] Prior to interviewing for employment with Delphi, Plaintiffs each completed a job application, which contained information about their work background and experience, as well as their current employment status, including their pay and fringe benefits. Their applications revealed that their hourly rate of pay from their then-current employers was greater than that offered by Defendant.

As part of the hiring process, Plaintiffs were interviewed by Ms. Carol Duff ("Duff"), Delphi's Hourly Employment Coordinator. Duff had access to the information contained on the job applications. During the interviews, Duff allegedly represented to and promised each of the Plaintiffs that, due to the work schedule (i.e., the hours of work offered by Delphi to Plaintiffs), they would earn more pay for a fixed period of time than in their current jobs. Duff further informed each of the Plaintiffs that, until September of 2002, the work schedule guaranteed each Plaintiff the opportunity to work for seven days a week and twelve hours a day ("7/12"), with no reservations. Based on these representations, Plaintiffs resigned from their positions and accepted employment with Delphi. In December of 2000, Delphi unilaterally stopped the 7/12 Program without notice to Plaintiffs. Defendant has refused to reinstate the program, despite repeated requests. As a result, Plaintiffs have suffered extreme financial hardship and emotional distress.

On May 28, 2002, Plaintiffs initiated the instant litigation in the Montgomery County Court of Common Pleas, setting forth six claims for relief, to wit: (1) breach of implied contract; (2) promissory estoppel; (3) fraud in the inducement; (4) fraud; (5) misrepresentation; and (6) negligent infliction of emotional distress (Doc. # 1).[3] On July 10, 2002, Defendant removed the action to this Court, asserting that subject matter jurisdiction exists due to both the existence of a federal question, 29 U.S.C. § 1331, and diversity of citizenship, 28 U.S.C. § 1332 (Doc. # 1).

---

1. Plaintiffs are Russell Johnson, Jeff Cohee, Tim Evans, Chris Schultz, James Saylor, Bob Snow, Doug Finkbine, Patrick Greggerson, Billy Farmer, Steve Maxwell, Don Stephens, Chuck Foster, Jeff Kelly, John Reinhart, and Richard Brown, Jr.

2. The following facts are taken from Plaintiffs' Complaint (Doc. # 1).

3. In Count Seven, Plaintiffs seek punitive damages.

Pending before the Court is Delphi's Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6) (Doc. # 6). For the reasons assigned, Defendant's Motion, treated as one for summary judgment, is SUSTAINED.[4]

## I. Standard Governing Defendant's Motion

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d

1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.

---

4. Defendant has submitted a copy of the collective bargaining agreement ("CBA") between Delphi and the IUE. Plaintiffs have not mentioned the CBA in their Complaint, and the failure to do so does not constitute "artful pleading" as a means to avoid indications that they have asserted claims for breach of the CBA. As stated, *infra,* Plaintiffs' claims are based on alleged contracts that were made independent of the CBA.

Defendant has raised § 301 preemption, based on the CBA, as a defensive argument to the viability of Plaintiffs' claims. In a Rule

12(b)(6) Motion, the Court would be prohibited from considering the CBA, because it constitutes materials outside of Plaintiffs' pleading. However, Plaintiffs have not disputed that Defendant's submission is an accurate copy of the CBA, and the presence of the CBA is dispositive of whether they may assert their state law claims, as a matter of law. Accordingly, the Court concludes that it is appropriate to consider the CBA and, consequently, to treat Defendant's Motion as one for summary judgment.

1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment....") Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. Defendant's Motion (Doc. # 6)

Defendant asserts that Plaintiffs' claims must be dismissed, because they are inextricably intertwined with Delphi's collective bargaining agreements with IUE–CWA and Local 755 ("the Union") and, therefore, they are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Defendant further argues that the claims are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151–169. Thus, Defendant contends that Plaintiffs' claims belong either before an arbitrator or the National Labor Relations Board ("NLRB"). Because the Court concludes that Plaintiffs' claims are precluded by § 301, only that argument will be addressed.

### A. Complete Preemption under Section 301 of the LMRA

There are two aspects to federal preemption of state law: conflict preemption and complete preemption. Conflict preemption arises where compliance with both federal and state law is a physically impossible, or "where state law stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *see Warner v. Ford Motor Co.,* 46 F.3d 531, 533 (6th Cir.1994)(en banc)(discussing difference between conflict and complete preemption). In contrast, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is [completely] preempted." *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

> Under Section § 301 of the LMRA,
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). "State law is thus [completely] 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *United Steelworkers of America v. Rawson,* 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

The reach of § 301 is not limitless, however. In *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), the Supreme Court made clear that § 301 does not completely preempt claims that are independent of the CBA. "[I]ndividual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law ... [A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement...." *Caterpillar,* 482 U.S. at 396–97, 107 S.Ct. 2425. The Sixth Circuit has summarized this, stating:

> Section 301 preempts only state law claims that are "substantially dependent on analysis of a collective-bargaining agreement," not claims that only "tangentially" involve CBA provisions. Furthermore, a defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 [complete] preemption.

*Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 799–800 (6th Cir.1990) (citations omitted).

In *DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994), the Sixth Circuit detailed a two-step approach to deciding whether complete preemption applies. *First,* the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. The Court must "look[ ] to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *DeCoe,* 32 F.3d at 216. "Only if the plaintiff can prove all the elements of her claim without requiring the court to examine the Collective Bargaining Agreement does her claim escape preemption." *Beckwith v. Diesel Technology, Inc.,* 215 F.3d 1325,

2000 WL 761808 (6th Cir. May 30, 2000), citing *id.* *Second,* the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right is born of state law and does not invoke contract interpretation, then there is no preemption; however, if the right is not born of state law and/or if contract interpretation is required, section 301 preemption is warranted. *Id.* (citations omitted). "To test the independence of the state law claim, the court reviews the elements of the state law cause of action to determine whether each element may be proved without interpretation of the contractual terms or substantial reference to the CBA." *Powers v. Kroger Co.,* 2002 WL 485011 (S.D.Ohio 2002), citing *DeCoe,* 32 F.3d at 216–219.

### 1. *Breach of Implied Contract*

█ Plaintiffs' breach of contract claim is based on the allegation that Delphi offered them employment under a 7/12 program, which was guaranteed to continue until September of 2002. To prove a breach of contract claim, a plaintiff must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (1994); *Nilavar v. Osborn,* 137 Ohio App.3d 469, 483–84, 738 N.E.2d 1271, 1281–82 (Ohio Ct.App.2000). Plaintiffs were not members of the bargaining unit at the time that Delphi made this promise, nor were they union members at the time that they agreed to employment. The alleged promise by Delphi was made to them individually, not as part of a collective bargaining agreement. By seeking to enforce this alleged contract, Plaintiffs are not attempting to enforce the CBA. In fact, they are attempting to enforce an agreement that is seemingly in conflict with the terms of the labor agreement. Whether the parties abided by the terms of the alleged individual agreements can be resolved without reference to the terms of the CBA. Thus, the first *DeCoe* element has been satisfied. Turning to the second prong, Plaintiff's claim is not premised on the CBA. Again, they are seeking to enforce promises which seemingly conflict with that agreement. Accordingly, Plaintiff's breach of contract claim, which is based on pre-employment promises, is independent of the CBA, and it is not subject to complete § 301 preemption.

### 2. *Promissory Estoppel*

█ To recover under the doctrine of promissory estoppel, a plaintiff must establish that: (1) the defendant made a clear, unambiguous promise; (2) the defendant should have reasonably expected the promise to induce action or forbearance on the part of the plaintiff; (3) the promise actually induced action or forbearance that was detrimental to the plaintiff; and (4) enforcement of the promise is necessary to avoid injustice. *Fisher v. Trinova Corp.,* — F.3d ——, ——, 1998 WL 774111 at *9 (6th Cir.1998); *Snyder v. Ag Trucking, Inc.,* 57 F.3d 484, 488 (6th Cir.1995); *Wing v. Anchor Media, Ltd.,* 59 Ohio St.3d 108, 570 N.E.2d 1095, 1098 (1991); *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). Delphi allegedly promised to allow 7/12 work schedules through September of 2002. It is unnecessary to review the CBA to determine whether that promise induced action or whether Plaintiffs suffered an injury due to that reliance. In addition, interpretation of the CBA is not required to determine whether Delphi should have expected Plaintiffs to rely on their representations and whether Plaintiffs reasonably did so. Accordingly, the first *DeCoe* prong is satisfied. Again, because Plaintiffs are seeking to enforce a pre-employment promise which was made apart from the CBA,

Plaintiffs' promissory estoppel claim is independent of the CBA, and it is not subject to § 301 complete preemption.

### 3. *Fraud in the Inducement, Fraud, Misrepresentation*

■ Under Ohio law, to establish a claim of fraud, a plaintiff must prove that the defendant made a representation or concealment, material to the transaction at hand, made falsely with the intent to mislead the plaintiff, upon which the plaintiff justifiably relied to his detriment. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus. A claim of fraud in the inducement "arises when a party is induced to enter into an agreement through fraud or misrepresentation." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998). In resolving Plaintiffs' fraud claims, the Court need not resort to interpreting the CBA to determine whether a representation regarding the 12/7 program was made to Plaintiffs during their pre-hiring interviews, whether those representations were material to Plaintiffs' decision to change employment, and whether Plaintiffs relied on them.

A closer question is whether interpretation of the CBA is necessary to establish that Delphi's alleged representations were falsely made and with the intent to mislead. Addressing circumstances similar to that herein, the Eighth Circuit ruled that § 301 did *not* preempt the plaintiffs' fraud claims. *Anderson v. Ford Motor Co.*, 803 F.2d 953, 957 (8th Cir.1986), *cert. denied,* 483 U.S. 1011, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987). Therein, Ford hired the plaintiffs, who were former employees whose recall rights had expired, offering them permanent positions. The plaintiffs were concerned that they would be "bumped" by the subsequent hiring of "preferential hirees," *i.e.*, individuals who had been laid off due to plant shutdowns. Ford gave repeated assurances that the plaintiffs would not be "bumped." However, before the end of their probation period, plaintiffs were bumped from their positions by employees on the preferential hiring list. In rejecting Ford's argument that the plaintiffs' fraud claims were preempted by § 301, the Eighth Circuit found "it significant that these [fraud] claims are based on representations Ford allegedly made before the time that [the plaintiffs] became employees of the company, that is, before they were even covered by the collective bargaining agreement."[5] *Id.* at 957–58. It reasoned: "It is clear that [plaintiffs'] contractual and quasi-contractual claims do not originate in, nor refer in any substantial way to, the rights and duties established in the collective bargaining agreement." *Id.* at 958.

The Eleventh Circuit has also held that fraud claims premised on pre-hiring representations are not preempted by § 301. In *Varnum v. Nu–Car Carriers, Inc.*, 804 F.2d 638 (11th Cir.1986), the plaintiff asserted that his employer represented to him during his job interview that he would be allocated work without consideration of his seniority, and that he could expect to gross about $7000 per month. The plaintiff alleged that the company's representative knew that the company was planning to implement a seniority-based dispatch system. After the seniority-based system was implemented, the plaintiff's income fell sharply, and he sued the company for fraud. Upon reviewing the district court's conclusion that the plaintiff's claim was preempted by § 301, the Eleventh Circuit reversed, reasoning that the plaintiff did

---

**5.** The Eighth Circuit further noted that a plaintiff who is an employee covered by a CBA cannot avoid preemption simply by labeling a claim for violation of the CBA as a state law fraud claim. *Id.* at 957 (citing *Bell v. Gas Serv. Co.,* 778 F.2d 512 (8th Cir.1985)).

not complain about the seniority system itself but, rather, the failure of his employer to inform him of the impending change while inducing him to accept employment. The court concluded that, because the plaintiff's complaint did not concern the seniority system itself, it "did not go to a term of employment covered by the collective bargaining agreement. Instead, the complaint involved Nu–Car's conduct prior to [the plaintiff] accepting employment." 804 F.2d at 640.

Taking a contrary view, in *Aguilera v. Pirelli*, 223 F.3d 1010, 1015 (9th Cir.2000), the Ninth Circuit concluded that interpretation of the collective bargaining agreement was vital to the resolution of fraud claims related to any terms of employment. It reasoned: "[T]here is no way to assess the alleged misrepresentation without examining the instrument that has been misrepresented, the collective bargaining agreement." In *Adkins v. General Motors Corp.*, 946 F.2d 1201 (6th Cir. 1991), the Sixth Circuit has likewise held that fraud claims were preempted. Therein, former employees brought fraud claims against their union and their former employer, alleging that the two entities had colluded together; that the union president had fraudulently induced them to ratify a new collective bargaining agreement, which deprived them of special seniority rights contained in a prior "bridge agreement;" and that the president misrepresented that the seniority rights would continue to be respected. The Sixth Circuit held that the resolution of the fraud claims was substantially dependent on an analysis of the collective bargaining agreement, reasoning that the bridge agreement was the product of collective bargaining, and that the court would be obliged to determine that the "bridge agreement" conferred special seniority rights on the plaintiffs, that the subsequent collective bargaining agreement abrogated those rights, what the

president told the plaintiffs, and whether these representations were false, given the court's construction of the agreements. *Id.* at 1209. The Court concluded: "If plaintiffs have been betrayed by their employer and their union and cheated out of valuable seniority rights in a fraudulent ratification procedure, their remedy is a timely suit for unfair representation/ unfair labor practices. Plaintiffs cannot be permitted to revive rights deemed extinguished under federal labor law by relying on state common law." *Id.* at 1210.

This Court finds the situation in *Adkins* to be distinguishable, and it agrees with the Eighth and Eleventh Circuits that Plaintiffs' fraud claims do not require interpretation of the CBA. In *Adkins,* the plaintiffs were existing bargaining unit members, and their claims were based on a misrepresentation of their rights under a new collective bargaining agreement and of the effect of ratification on their seniority rights. Thus, an analysis of the former and new collective bargaining agreements was necessary to determine the rights that actually existed and if they had been misrepresented. In the present case, Plaintiffs were not members of the bargaining unit at the time the alleged misrepresentations were made. They have not asserted that Delphi misrepresented the provisions of the 12/7 program, as it exists under the collective bargaining agreement, nor have they asserted that Delphi lacked the ability under the CBA to terminate the program at any time. Thus, in order to resolve Plaintiffs' claims herein, it is not necessary for the Court to determine whether the CBA permitted Delphi to terminate the 12/7 Program before September, 2002. Rather, the necessary inquiry is whether Delphi represented that the 12/7 program would continue until that date, knowing that it would be terminated (rightly or wrongfully) earlier. *See Kittle v. Prudential Ins. Co. of Amer.,* 102

F.Supp.2d 1029, 1036 (S.D.Ind.2000) (claim by former employee that employer fraudulently induced him to quit his job with previous employer was not substantially dependent upon analysis of the collective bargaining agreement). Because the Court need not consider the terms of the CBA at issue in determining whether Plaintiffs were fraudulently induced to accept employment with Defendant, their fraud, fraudulent inducment and misrepresentation claims are not completely preempted by § 301.

### 4. *Negligent Infliction of Emotional Distress*

■ Defendant's Motion to Dismiss Plaintiffs' negligent infliction of emotional distress claim is uncontested. Under Ohio law, claims of negligent infliction of emotional distress are generally limited to instances where the plaintiff is a bystander to an accident or was in fear of physical consequences to his own person. *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1120 (Ohio 1996); *Bunger v. Lawson Co.*, 82 Ohio St.3d 463, 466, 696 N.E.2d 1029 (Ohio 1998); *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 86–87, 652 N.E.2d 664 (Ohio 1995). Upon review of the relevant case law, the Court agrees that Plaintiffs' claim is not viable, whether construed as a § 301 claim or a state law claim for negligent infliction of emotional distress. Accordingly, Defendant's Motion to Dismiss Plaintiffs' negligent infliction of emotional distress claim is SUSTAINED.

### B. *Whether Plaintiff's Claims are Subject to Conflict Preemption, in Light of the CBA*

Defendant claims that the CBA addresses the same terms of employment as are contained in the Plaintiffs' individual agreements, and thus Plaintiffs cannot prevail on their state law claims, due to conflict preemption. Specifically, it argues that the CBA contains provisions relating to hours of work, overtime and wages. It further notes that the CBA contains a provision on "full utilization," which it equates with the 12/7 program. Delphi asserts that, due to these provisions, Plaintiff's individual contracts with the company are rendered unenforceable, because the individual agreements conflict with the terms of the CBA.

In *J.I. Case Co. v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), the Supreme Court recognized that collective bargaining agreements supersede individual employment contracts, including pre-hiring agreements, which limit or condition the terms in the CBA. *Id.* at 337, 64 S.Ct. 576. It stated: "It is equally clear since the collective trade agreement is to serve the purpose contemplated by the Act, the individual contract cannot be effective as a waiver of any benefit to which the employee otherwise would be entitled under the trade agreement." However, the Court left unresolved whether individual contracts which are more advantageous for the individual employee may be enforced, stating: "Individual contracts cannot subtract from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the laws of contracts applicable, and to the Labor Board if they constitute unfair labor practices." *Id.* at 339, 64 S.Ct. 576. Although declining to rule on that issue, the Court noted that "[t]he practice and philosophy of collective bargaining looks with suspicion on such individual advantages" and "advantages to individuals may prove as disruptive of industrial peace as disadvantages." *Id.* at 338, 64 S.Ct. 576. The Supreme Court later stated in *Caterpillar* that "individual employment contracts are not inevitably superseded by any subsequent collective bargaining agreement covering an individual employee, and claims based

upon them may arise under state law." 482 U.S. at 396, 107 S.Ct. 2425.

Since that time, the federal courts of appeals, as well as state courts, have failed to reach a consensus as to whether individual employment contracts whose terms are within the scope of a CBA but are more advantageous may be enforced. As argued by Defendant, the Ninth Circuit has taken the position that state law based contract claims arising from alleged pre-employment misrepresentations *are* preempted by § 301 when the employee is subsequently hired under a CBA, stating, "when an independent agreement is inconsistent with the provisions of a collective bargaining agreement, the bargaining agreement controls." *Aguilera*, 223 F.3d at 1015. The Ninth Circuit distinguished *Caterpillar* on its facts, noting that *Caterpillar* involved an individual employment contract negotiated for a position not covered by the CBA, at a time when the employee was not covered by a CBA.

In contrast, the Eighth Circuit has permitted claims by bargaining unit employees based on pre-hiring promises that fall within the purview of the CBA. *Anderson, supra.* The court of appeals further reasoned: "[W]e don't think that because Ford had the right to displace [plaintiffs] under the terms of the collective bargaining agreement, the company also had the right to either misrepresent to [them] the terms and conditions of employment or to avoid contractual or quasi-contractual obligations based on pre-employment promises." 803 F.2d at 958. The Seventh Circuit has likewise held that individual employment contracts are superseded only to the extent that they are less advantageous than the CBA. *Loewen Group Internat'l, Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir.1995). The Seventh Circuit explained: "[A] plaintiff covered by a collective bargaining agreement is permitted to assert le-gal rights independent of that agreement, including state-law contract rights. Therefore, as long as the employer is not attempting to circumvent a union or undermine a collective bargaining agreement, it is permissible to negotiate more favorable contracts with individual members." *Id.* at 1426 (citations omitted). The Fourth Circuit has stated that "Employees who have made valid individual contracts that conflict with subsequent federal labor agreements, and thus cannot be specifically enforced, are still free to bring damages claims against their employer for breach of contract." *White v. National Steel Corp.*, 938 F.2d 474, 486 (4th Cir.1991). The Third Circuit has also permitted claims based on pre-hiring misrepresentations. In *Berda v. CBS, Inc.*, 881 F.2d 20 (3d Cir.1989), the plaintiff accepted employment with CBS for a bargaining unit position, based on representations of permanent, reasonably long-term employment. He alleged that, at the time of his interview, CBS knew that substantial layoffs would soon occur. He subsequently sued for breach of contract, promissory estoppel and other torts. The Third Circuit permitted the employee's claims to proceed, on the ground that "as in *Caterpillar*, the oral agreement at issue in the instant case gave an advantage to the employee, and thus, as in *Caterpillar*, we cannot say that the oral agreement was subsumed by the collective agreement such that no state cause of action can be premised on the oral contract." *Id.* at 26. See also *Varnum v. Nu-Car Carriers, Inc.*, 804 F.2d 638, 640 (11th Cir.1986) (permitting claim based on pre-hiring representation was not preempted by § 301); *Rand v. Bath Iron Works Corp.*, 2001 WL 127655 (D.Me. Feb. 15, 2001) (same). The Court finds this reasoning to be persuasive.

However, as asserted by Defendant, the Sixth Circuit has implicitly articulated its

agreement with the Ninth Circuit, as expressed in *Maushund v. Earl C. Smith, Inc.*, 795 F.2d 589 (6th Cir.1986); *Ulrich v. Goodyear Tire & Rubber Co.*, 884 F.2d 936 (6th Cir.1989); and *Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir.1990). Defendant is correct that *Maushund* takes the position that a collective bargaining agreement supersedes individual agreements, whether made prior to or during the term of employment, when the terms are covered by the CBA. In *Maushund,* a truck driver, who believed that the CBA did not cover him, sought to enforce an oral contract not to discharge him without cause. The Sixth Circuit concluded that the plaintiff was precluded from enforcing a separate agreement with his employer, because he was, in fact, covered by CBA. It held that "[t]he collective bargaining process prohibits [a bargaining unit employee] from engaging in separate negotiations with the company and precludes any action to enforce such an agreement." 795 F.2d at 590. The *Maushund* court specifically held that § 301 preempts claims recognized in *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880 (1980), which permitted claims for breach of a "just cause" termination agreement created from pre-employment representations of job security. The court also specifically approved of the decision in *Fifield v. U.A.W.*, 570 F.Supp. 562 (W.D.Mich.1983), in which the district court concluded that § 301 preempted the plaintiff's breach of contract claim, which was based on her employer's assurances of just cause termination.

In *Ulrich,* salaried employees sought to return to their former bargaining unit positions, pursuant to terms of the collective bargaining agreement. Their requests were denied, due to an impeding sale of the corporate division, and the union refused to process their grievances, on the ground that, as salaried employees, they were no longer covered by the CBA. The Sixth Court concluded that the plaintiffs' right to return and their request for seniority rights depended on rights created by the CBA. Thus, the plaintiffs' state law claims turned on a determination of the language of the CBA and, therefore, they were inextricably intertwined with the CBA. The court of appeals reiterated its prior holding in *Maushund* that employees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims. *Id.* at 938. In *Fox,* a bargaining unit employee brought state law contract, promissory estoppel and fraud claims against her employer, arising out of the company's alleged failure to control coworkers' harassment and the inadequate investigation of employee's grievances and complaints. The Sixth Circuit held that the employee's state law claims were preempted by § 301, reiterating that "employees covered by a CBA cannot rely upon the existence of a separate, individual employment contract giving rise to state law claims." The Fox *court* recognized, however, that individual contracts are not necessarily rendered void upon accepting a bargaining unit position. It stated: "[R]ights under individual employment contracts predating the existence of a CBA are not extinguished by the subsequent negotiation of a CBA, and promises made by an employer after the expiration of a CBA similarly may give rise to viable state law claims for breach of contract." 914 F.2d at 801 n. 5. Since *Fox,* the Sixth Circuit restated its expansive interpretation of § 301 preemption:

We have had many opportunities to interpret and apply the §§ 301 pre-emption doctrine set forth in *Lingle* and *Allis–Chalmers.* We have not applied a cramped and narrow construction of the dictates of *Lingle* and *Allis–Chalmers* in reaching our decisions, nor have we limited §§ 301 pre-emption to cases where

the precise meaning of precise words in the CBA is the crux of the state-based claim. Rather, we have found many state-based claims pre-empted because they have implicated the federal policies underlying federal labor law. In doing so, we have followed the dictates of the Court in *Allis–Chalmers* that "[t]hese policies require that 'the relationships created by [a collective bargaining agreement]' be defined by application of 'an evolving federal common law grounded in national labor policy,' " *Allis–Chalmers,* 471 U.S. at 210–11, 105 S.Ct. at 1911, and that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of those parties, are pre-empted . . . ." *Allis–Chalmers, id.* at 213, 105 S.Ct. at 1912.

In applying these principles, we have stated that §§ 301 preempts state law when "employment relationships which are subject to a collective bargaining agreement" are implicated, *Maushund v. Earl C. Smith, Inc.,* 795 F.2d 589, 591 (6th Cir.1986), or when "the rights to be vindicated and the relationship between the parties are created not by state law, but by the collective agreement itself," *Terwilliger v. Greyhound Lines, Inc.,* 882 F.2d 1033 (6th Cir.1989), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990), or when a state-based claim requires examining the practices and customs of a workplace whose conditions are governed by a CBA, *Ulrich v. Goodyear Tire & Rubber Co.,* 884 F.2d 936 (6th Cir.1989), or when "employees covered by a CBA . . . rely upon the existence of a separate, individual employment contract giving rise to state law claims." *Fox v. Parker Hannifin Corp.,* 914 F.2d 795 (6th Cir.1990). *Jones v. General Motors Corp.,* 939 F.2d 380, 383 (6th Cir.1991) (citations omitted).

Regardless of how this Court might resolve the question of the viability of state law claims based on pre-employment representations if presented with a tabula rasa, the Sixth Circuit has already spoken on this issue. Based on the Sixth Circuit's decision in *Maushund* and its progeny, which have rejected state law breach of contract claims and other reliance-based claims, based on pre-employment representations, this Court is constrained to conclude that Plaintiffs' breach of contract claims are precluded by § 301, because their relationship with Delphi concerning the 12/7 program is governed by a collective bargaining agreement and the terms of their individual contracts conflict with the CBA. Plaintiffs' state law claims of promissory estoppel and fraud, which are likewise based on pre-employment representations concerning bargaining unit positions, are also conflict preempted by § 301. *See Fox, supra.* Accordingly, Defendant's Motion to Dismiss Plaintiffs' Complaint, treated as a motion for summary judgment (Doc. # 6), is SUSTAINED.

For the foregoing reasons, Defendant's Motion to Dismiss, treated as a motion for summary judgment (Doc. # 6), is SUSTAINED.

Judgment will be entered in favor of the Defendant and against the Plaintiffs.

WHEREFORE, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.